## STARR FARMS, INC. et al *v.* SOUTHWESTERN ELECTRIC POWER COMPANY

80-183                                              607 S.W. 2d 391

Supreme Court of Arkansas
Opinion delivered November 17, 1980

*Blair, Cypert, Waters & Roy*, for appellants.

*Greenhaw & Greenhaw; Little, McCollum & Mixon*; and *Richard L. Arnold*, for appellee.

GEORGE ROSE SMITH, Justice. Three companion suits, consolidated below, were brought by the appellants in the Washington Chancery Court, seeking to enjoin Southwestern Electric Power Company, a licensed foreign corporation, from trespassing upon the plaintiff's lands and to recover a total of $175,000 as damages for past trespasses. SWEPCO defended its entry upon the plaintiff's lands as having been made under the authority of circuit court orders by which SWEPCO's wholly owned subsidiary, a domestic corporation, had condemned a right of way for the construction of electrical transmission lines across the plaintiff's lands. The case was tried on admissions and other conceded facts, without testimony. The chancellor dismissed the complaints for want of equity. The appeal comes to this court under Rule 29 (1) (a).

The ultimate question is whether SWEPCO should be permitted to use its subsidiary, Southwest Arkansas Utilities Corporation, to condemn a right of way so that SWEPCO itself can construct its transmission lines upon the plaintiffs' lands. That precise question was answered in the affirmative in earlier cases involving this same parent corporation and this same subsidiary, though SWEPCO has changed its name slightly since then. *Patterson Orchard Co.* v. *Southwest Ark. Utilities Corp.*, 179 Ark. 1029, 18 S.W. 2d 1028, 65 A.L.R. 1446 (1929); *Southwestern Gas & Elec. Co.* v. *Patterson Orchard Co.*, 180 Ark. 148, 20 S.W. 2d 636 (1929). Both the *Patterson Orchard* cases arose, as did this one, from that section of our Constitution denying to foreign corporations the right of eminent domain. Ark. Const., Art. 12, § 11 (1874).

The first *Patterson Orchard* case is almost indistinguishable from the case at bar. There SWEPCO's predecessor, a Delaware corporation, was relocating an interstate transmission line when it reached the Patterson property and was unable to get permission to cross the orchard. On March 7, 1928, the company filed a condemna-

tion action in the circuit court and obtained an order permitting it to enter the land and construct its line. The landowner at once protested on the ground that Southwestern Gas & Electric was a foreign corporation without power to condemn a right of way. The company, however, went ahead and practically completed its construction.

Three days later, on March 20, the landowner presented its protest to the circuit judge, who suspended his earlier order and set the matter for a hearing on March 24. In that four-day interval Southwestern Gas & Electric hastily formed its present subsidiary, Southwest Arkansas Utilities, whose corporate purpose as stated in its charter was to generate and transmit electricity for public use. The parent company conveyed part of the new transmission line, including the segment across the orchard, to the subsidiary in exchange for all its capital stock except two qualifying shares. The parent company then leased the line from the subsidiary, which intervened in the case on March 24. After the parent company abandoned its original condemnation effort the case was transferred to chancery and resulted in a decree condemning a right of way for the subsidiary company. The landowner appealed to this court.

We stated much the same question that is again presented in the case at bar: "Could the appellee, a domestic utilities corporation, clothed with the power of eminent domain, exercise that power for the benefit of a like foreign corporation which had complied with the general laws of the state prescribing upon what terms a foreign corporation might do business therein?" It was argued there, as it is here, that the creation of the subsidiary "was but a subterfuge for acquiring a right-of-way indirectly" for the parent company, which could not be done directly because of the constitutional prohibition.

We followed the great weight of authority in upholding the right of a foreign corporation to exercise the power of eminent domain through a domestic subsidiary. The opinion discussed cases from Iowa, Utah, and New York, and distinguished the only contrary holding because the Nebraska con-

stitutional provision was different from ours. Our final reasoning was this:

> Since the power to acquire rights-of-way by purchase, lease, or otherwise, is not excepted from the general powers granted, it follows that a foreign corporation may exercise such power. The privilege granted a foreign corporation to do business in this State would be practically nullified if it were restricted from doing the act which was necessary to the prosecution of that business, and, as it it is a necessary incident to the business of companies engaged in the transmission of electricity for public use to acquire rights-of-way, this authority must be deemed to have been granted under its general powers, unless expressly or by necessary implication prohibited in terms expressed in the Constitution, and which it does not do.

In the present litigation there was not even a suggestion of concealment or subterfuge in the condemnation actions brought by Southwest Arkansas Utilities against these appellants. The complaints alleged that the plaintiff was an Arkansas corporation authorized to engage in the businesss of generating, transmitting, and supplying electricity for public use, that it had the power of eminent domain, and that it was a wholly owned subsidiary of SWEPCO. The complaints recited that plaintiff was acquiring the right of way for the use and benefit of SWEPCO and at its direction. The pleadings cited the plaintiff's own statutory authority to exercise the power of eminent domain and also stated that SWEPCO, about three earlier, had obtained from the Public Service Commission certificates of environmental compatibility and public need for the major utility facilities which would be constructed after the right-of-way had been acquired by Southwest Arkansas Utilities and assigned or leased by it to SWEPCO. Ark. Stat. Ann. § 73-276.15 (Repl. 1979). The condemnation orders approved deposits to secure the landowners, put the plaintiff in possession of the rights of way, and vested title in the plaintiff with all rights of enjoyment set forth in the complaints.

The appellants attempt to distinguish our holdings in

the *Patterson Orchard* cases on the ground that in those cases the subsidiary corporation actually held title to the transmission lines and leased them to the parent company, while here SWEPCO itself entered the right of way and constructed the lines. We do not see that this distinction is of controlling importance. Our rule is that separate corporate entities will be disregarded only "when the privilege of transacting business in corporate form has been illegally abused to the injury of a third person." *Rounds & Porter Lbr. Co.* v. *Burns*, 216 Ark. 288, 225 S.W. 2d 1 (1949). SWEPCO has not used the device of a subsidiary illegally, its procedure having been approved in *Patterson Orchard*. Nor have the appellants suffered any pecuniary injury. In the condemnation cases they had the opportunity to obtain just compensation for the use of their lands; presumably they did so. They knew from the condemnation complaints that the rights of way were being acquired for SWEPCO and would be used by SWEPCO. The proof does not show the arrangement between Southwest Arkansas Utilities and its parent company, but we do not see how the landowners have any basis for complaint even if the subsidiary merely gave the parent company oral permission to use the right of way, instead of executing a formal lease.

The appellants recognize the *Patterson Orchard* cases as precedents and have not asked us to overrule them, but that suggestion has been made during our consideration of this case. We are firmly of the view that those cases, which construed our Constitution and statutes and laid down a rule of property which has since been relied upon, should not be disapproved. As the court said in our earlier quotation from the first *Patterson* case, the legislature authorized SWEPCO's predecessor, although a foreign corporation, to engage in the business of generating and transmitting electricity for public use, knowing that it was essential to the business that the company acquire rights of way for its lines. More than 50 years have passed since the *Patterson* cases were decided, but the legislature has not seen fit to change the rule announced in those decisions. If any change is to be made at this late date, it should be made by the legislature, not by the courts. A repudiation of the *Patterson Orchard* rule would undoubtedly disrupt many public utility businesses, but as far as we can

see there would not be the slightest compensating benefit either to landowners or to the general public.

Since we are affirming the chancellor's decree on the authority of our earlier precedents, it is unnecessary for us to consider SWEPCO's alternative contention, that our constitutional distinction between domestic and foreign corporations with respect to the right of eminent domain is a denial of the equal protection of the laws.

Affirmed.