Thomas G. YOUNG *v.* ENERGY TRANSPORTATION SYSTEMS INC. OF ARKANSAS

82-160                          644 S.W.2d 266

Supreme Court of Arkansas
Opinion delivered January 10, 1983

*Richard L. Peel,* for appellant.

*Friday, Eldredge & Clark,* by: *Michael G. Thompson,* for appellee.

STEELE HAYS, Justice. Energy Transportation Systems of Arkansas (ETSIARK) is an Arkansas corporation wholly owned by ETSI Pipeline Project, a joint venture — a Delaware partnership formed for the purpose of constructing and operating a coal slurry pipeline from Wyoming to various states, including Arkansas. The partnership consists of five separate foreign corporations, each of which is duly qualified to conduct business in the State of Arkansas. ETSIARK, the appellee, filed a complaint against the appellant, Thomas Young, to condemn a pipeline easement across land owned by appellant pursuant to Ark. Stat. Ann. § 73-1901[1]. The court below granted the easement.

The appellant raises two points on appeal: 1) the appellee cannot condemn on behalf of a foreign joint venture, 2) the appellee is not a pipeline "company" within the meaning of Ark. Stat. Ann. § 73-1901.

It has been clearly settled that a domestic subsidiary of a foreign corporation can be granted the power of eminent domain to condemn on behalf of a foreign parent corporation. *Patterson Orchard Co.* v. *Southwest Arkansas Utilities Corp.,* 179 Ark. 1029, 18 S.W.2d 1028 (1929); *Starr Farms, Inc.* v. *S.W. Electric Power Co.,* 271 Ark. 137, 607 S.W.2d 391 (1980). The only issue we are faced with in this case is whether there is any significant difference when the parent company is a partnership and not a corporation. The appellant raises only one possible difference — that corporations, unlike partnerships, are subject to substantially more regulation and control by the state.

We do not find this to be a significant difference in the present case. The firms in this joint venture are a partner-

---

[1]All pipeline companies operating in this State are hereby given the right of eminent domain and are declared to be common carriers, except pipelines operated for conveying natural gas for public utility service.

ship of foreign corporations all authorized to do business in this state. Under the Arkansas Uniform Partnership Act, liabilities of the partnership run to each member individually as well as to the firm as a whole. Consequently should the partnership incur any liabilities, prosecution or suit could be taken against the individual member corporations. Additionally, in affirming a foreign corporation's right to condemn through its domestic subsidiary, we held in *Starr, supra,* that "the privilege granted a foreign corporation to do business in this state would be practically nullified if it were restricted from doing the act which was necessary to the prosecution of the business . . . " We find the principle applies with equal force to this situation — where there are several foreign corporations, all qualified to do business in the state, but operating as the parent company in the form of a partnership.

The appellant next submits that the appellee is not a "company" within the meaning of Ark. Stat. Ann. § 73-1901. He argues that the right of eminent domain cannot be granted without statutory authority, and that the statute granting the right of eminent domain must be strictly construed. He contends that "company" must be read to mean "corporation." And had the legislature intended others besides corporations to have this right, it would have expressly so stated in the enabling legislation.

While we agree with the appellant's statements on the general principles of statutory authority and eminent domain, we do not arrive at the same conclusion. Basic guidelines for interpretation of statutes provide that we give words their ordinary and usually accepted meaning. *Hicks v. Arkansas State Medical Board,* 260 Ark. 31, 537 S.W.2d 794 (1976); *Canal Insurance Co.* v. *First National Bank, Fort Smith,* 268 Ark. 356, 596 S.W.2d 709 (1980). When the General Assembly uses words which have a fixed and well known legal significance, they are presumed to have been used in that sense. *Fernwood Mining Co.* v. *Pluna,* 138 Ark. 459, 213 S.W. 397 (1919). *Black's Law Dictionary* defines "company" as:

Union or association of persons for carrying on a

commercial or industrial enterprise; a partnership, corporation, association or joint stock company.

*Webster's New World Dictionary* defines "company" as:

A group associated for same purpose as to form a commercial or industrial firm.

*firm* is defined as:

1) a business company or partnership of two or more persons, distinguished from corporation in that a firm is not legally recognized as a person apart from the members forming it.

2) popularly, any business company whether or not incorporated.

It is also settled that it is presumed the legislature in enacting the law did so with the full knowledge of the constitutional scope of its powers and or prior legislation on the same subject. *McLeod, Commissioner of Revenues* v. *Santa Fe Trail Transportation Co.*, 205 Ark. 231, 168 S.W.2d 413 (1943). Ark. Stat. Ann. § 73-115 (promulgated in 1919) provides for the jurisdiction of the Arkansas Public Service Commission and Arkansas Transportation Commission to extend to and include, among others, pipeline companies. The statute goes on to read:

And for the purpose of this act, and in the construction of this act, every person, firm, association, company, partnership or corporation or other organizations engaged in the operation of any public utility above indicated, shall be deemed to be a company within the meaning of this act.

Ark. Stat. Ann. § 73-1901 is not part of the Act referred to in the above section, but was promulgated after § 73-115 in 1921. Although in construing a statute reference may be had to other laws on the same general subject matter, *Sargent* v. *Cole, Judge,* 269 Ark. 121, 598 S.W.2d 749 (1980), we don't find this argument conclusive in this case. Both statutes deal

with the general subject matter of regulation and operation of pipeline companies but regulatory measures could lend themselves to a broader reading, whereas a statute on eminent domain must be read strictly. However, the eminent domain statute was passed within a short time *after* the definitional statute, it is of the same *general* subject matter, and the word in question is commonly used in the generic sense. We don't find this argument dispositive, but we do find it persuasive in reaching our conclusions.

With the above principles in mind as applied to this case we read the word "company" within § 73-1901 to be used in the generic sense. By contrast, to accept the appellant's contention that we read the word "company" as "corporation" would be a strained interpretation. A forced interpretation for the purpose of extending or limiting the meaning should be avoided. See *Hicks v. Arkansas State Medical Board, supra.*

Appellant also argues that Art. 12 § 9[2] of the Arkansas Constitution suggests the right of eminent domain is limited to corporations. We do not read that section with such implied restrictions and to do so would be contrary to our interpretation of the general grant of eminent domain to the state in Art. 2 § 23.

> By virtue of our Constitution the State's right of eminent domain is conceded, and the legislature as the representative of the State's sovereignty, *or the agency to which the legislature has granted the power,* has the right to take any kind of private property for public use. *Cloth* v. *Chicago Rock Island and Railway Co.,* 97 Ark. 87 (1910) and see Eminent Domain 29 CJS § 2, 3. (Emphasis added).

Nor do we agree with appellant's last argument that the

---

[1]No property, nor right of way, shall be appropriated to the use of any corporation until full compensation therefor shall be first made to the owner, in money, or first secured to him by a deposit of money, which compensation, irrespective of any benefit from any improvement proposed by such corporation, shall be ascertained by a jury of twelve men in a court of competent jurisdiction, as shall be prescribed by law.

legislature in the first instance has no authority to grant the right of eminent domain to individuals or partners. Although there is authority to the contrary, the legislature may confer on an individual or a partnership the power to condemn private property for public purposes. *Eminent Domain* 29A CJS § 27; *Nichols on Eminent Domain* 1 § 3.21[2]. We find the statement in *Cloth, supra,* to be in harmony with this approach, and our legislature has confirmed its agreement by granting such powers to individuals for public use. See Ark. Stat. Ann. § 76-110; § 35-801.

ADKISSON, C.J., and HICKMAN and PURTLE, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. This is an eminent domain case and the majority is consistent with past judicial approaches which are liberal and approve most claims of the power of eminent domain. The legislation which is the basis of the asserted power of eminent domain is arbitrary at the least, vague at best, and cannot in my judgment be the basis of the proposed condemnation. If the General Assembly intended what has been approved, then it was neglectful of its duty.

What has been approved is that a corporation, a subsidiary in fact of a foreign partnership, has filed articles *declaring it* has the power of eminent domain. There is no claim by the corporation that *it* is a pipeline company; indeed, in all candor the corporation declares its purpose is to simply condemn rights of way over Arkansas land and then transfer the property to the foreign interests, that will undoubtedly construct a pipeline. What will happen thereafter can only be speculated upon. My point is that the General Assembly has not passed an act authorizing this pipeline, declaring it in the public interest, defining the conditions under which it can condemn Arkansas land, and limiting or expanding its authority or power in any way. It is a claim for a blank check which has been duly signed by the majority.

Surely somewhere we have gone astray. To begin with, Arkansas recognizes this sovereign right of eminent domain as resting in the General Assembly. At the same time it

recognizes "[T]he right of property is before and higher than any constitutional sanctions ... " ARK. CONST. art. 2, §§ 22 & 23. Such constitutional provisions allowing the exercise of eminent domain should be liberally construed in favor of the property owner. *Delaware, L. & W. R. Co.* v. *Morristown,* 276 U.S. 182 (1927). Both parties concede the only authority the corporation can claim for its exercise of the power of eminent domain is under Ark. Stat. Ann. § 73-1901, passed in 1921 with an emergency clause. It reads in its entirety:

> All pipeline companies operating in this State are hereby given the right of eminent domain and are declared to be common carriers, except pipelines operated for conveying natural gas for public utility service. All gas lines or companies operating within the State who render a domestic or general service to the public in furnishing and sale of gas are hereby required to buy or furnish from the lowest or most advantageous market. Failure to do so shall deprive them of the difference in price between such market and the one of which purchases are made.[1]

It is fundamental that such statutes must be strictly construed in favor of the landower because they are in derogation of the common law. *City of Little Rock* v. *Sawyer,* 228 Ark. 516, 207 S.W.2d 30 (1958).

Does this statute mean any corporation can file articles of incorporation with the Secretary of State declaring itself a pipeline company, and then proceed to condemn land, without any limitations or restrictions whatsoever, and then build a "pipeline" for any purpose? Does it mean any corporation claiming to be a "pipeline" company, no matter what will be carried (water to Texas would be a cruel example) has a forehand stamp of approval? Evidently that is so because that is what the majority has approved.

The fault does not lie with the appellee corporation because, no doubt, if it were required to obtain specific

---

[1]The act may have been passed because a pipeline *operating* in Arkansas needed a statute to condemn property, hence the emergency clause.

authority to build a coal-slurry pipeline it would probably be found to involve a proper public purpose. The fault lies in the historical attitude of the legislature and courts towards the exercise of the power of eminent domain. When this state and country were expanding and developing, "progress," being deemed wise, was aided and encouraged by a liberal attitude toward the exercise of the power. Precedents, both legislative and judicial, while giving lip service to holding the power in check, actually allowed the power to run unrestrained. No longer can we afford that luxury. Land, trees and water are being rapidly depleted and changed from their natural state; "progress" can no longer be automatically equated with the public good.

At the least it is time to give more than lip service to the law. Rather than construe the constitution and acts of the General Assembly liberally to favor the exercise of the power of eminent domain, as we have done and continue to do, it is time to restrict the exercise of this power as it should have been restricted from the beginning.

The statute in issue, in my judgment, cannot be used by a corporation contemplating building a pipeline because it is too arbitrary and vague. The General Assembly cannot by fiat make any use of property a public use; any attempt to do so arbitrarily can be declared invalid by the courts. *Walker* v. *Shasta Power Co.,* 160 F. 856 (9th Cir. 1908). In fact, the statute makes no declaration a pipeline is for a public purpose, or defines what kinds of pipelines are for a public purpose.

When a fertilizer pipeline was to be constructed in Arkansas, a specific grant of authority was obtained from the General Assembly. *See* Ark. Stat. Ann. § 73-1904. At the very least that is the type of legislation I would require for a "pipeline" to use this most powerful legal authority. Otherwise, a private individual or company and not the General Assembly nor the courts, decides when, where, and how the power of eminent domain will be used. That is the ultimate corruption of a power reserved solely for a sovereign state.

Our hands have not been idle in this matter. In *Patterson Orchard Co. v. Southwest Arkansas Utilities Corp.*, 179 Ark. 1029, 18 S.W.2d 1028 (1929), and *Southwestern Gas & Electric Co. v. Patterson Orchard Co.*, 180 Ark. 148, 20 S.W.2d 636 (1920), we did approve, in a sense, the legal approach used by the appellee corporation. And in *Starr Farms, Inc. v. Southwestern Electric Power Co.*, 271 Ark. 137, 607 S.W.2d 391 (1980), we said the *Patterson* decisions had become a "rule of property," which is another way of saying we were probably wrong but it is too late to change; but, in those cases the subsidiary was a bona fide electric utility company subject to existing regulations of an Arkansas agency. There is no such control over the subsidiary in this case. It declares its authority; it decides how it will exercise its authority, how much land it will need, and where it will go. That is not to say it will, when operating, be free from regulation, but its use of the power of eminent domain, the central issue in this case, is decided and formulated by it — not the General Assembly.

I would not permit the corporation to proceed under Ark. Stat. Ann. § 73-1901; I would require a specific grant of authority from the General Assembly since that is what the law requires.

ADKISSON, C.J., and PURTLE, J., join in this dissent.