## COLUMBIA COUNTY RURAL DEVELOPMENT AUTHORITY and The CITY OF MAGNOLIA, ARKANSAS *v.* B. J. HUDGENS et al

84-134                                    678 S.W.2d 324

Supreme Court of Arkansas
Opinion delivered October 22, 1984

416

*Bruce D. Maloch,* for appellant Columbia County Rural Development Authority.

*Ronnie J. Bell,* for appellant City of Magnolia.

*R. David Freeze* of *Smith, Stroud, McClerkin, Dunn & Nutter,* for appellees.

ROBERT H. DUDLEY, Justice. The single issue on appeal is whether a corporation organized under the Rural Development Authority Act has the authority to exercise the power of eminent domain for the purpose of acquiring, constructing and equipping a multi-use water supply lake.

The Columbia County Quorum Court approved Amended Ordinance No. 83-1, which recited that the county's water supply wells for residential and industrial use were being depleted and called for an election to determine whether to adopt a 1% sales and use tax within the county in order to construct a multi-use water supply lake. The voters approved the tax and the cities of

Magnolia, Taylor, Waldo, Emerson and McNeil entered into an agreement with Columbia County to pool the money collected from the tax to finance the project. The stated purpose of the interlocal agreement is to provide for a multi-use water supply and recreation lake. The Columbia County Quorum Court subsequently passed Ordinance No. 83-3 which provided for the creation of the appellant corporation, the Columbia County Rural Development Authority.

The appellant contends that it has the power of eminent domain as set forth in Ark. Stat. Ann. § 35-401, since it will supply water to the contracting cities. The appellees are landowners within the area covered by the proposed lake site. The City of Magnolia was allowed to intervene.

The trial court held that appellant did not have the power of eminent domain to acquire the land in question for a multi-use water supply lake. We reverse. Jurisdiction is in this court under Rule 29 (1) (c).

Our Rule on the authority to exercise eminent domain is clear:

> Statutes which relate to the power of eminent domain should be strictly construed in favor of the land-owner largely because they are in derogation of the common right. This rule is particularly applicable where there is an alleged delegation of power. As a result of strict construction, the power itself must be clearly expressed by the statute or necessarily implied ***

*City of Little Rock* v. *Sawyer,* 228 Ark. 516, 309 S. W. 2d 30 (1958).

Since 1895, corporations organized for the purpose of supplying water to municipalities clearly have had authority to exercise the power of eminent domain. Ark. Stat. Ann., Title 35, Chapter 4 (Repl. 1962). The rationale behind the legislation is that supplying water to municipalities meets a public purpose. Constitutionally, pri-

vate property can be taken under the power of eminent domain only for a public use. *See City of Little Rock* v. *Raines,* 241 Ark. 1071 at 1083, 411 S.W.2d 486 (1967).

In 1963 the Rural Development Authority Act was passed. Ark. Stat. Ann. Title 20, Chapter 14 (Repl. 1968). Section 20-1403 (a) of this act provides for the formation of public corporations which are authorized to acquire real property for private use as well as public use. An example of private use is the authorization to acquire small farms and consolidate them into adequate farming units. Ark. Stat. Ann. § 20-1403(g)(2)(b). An example of public use is the authorization to build reservoirs and water works for community purposes. Thus, the original Rural Development Authority Act included the power of eminent domain for private use, making the act constitutionally suspect. By Act 75 of 1967 the power of eminent domain was removed from the Rural Development Authority Act. By this action the General Assembly deleted the power of eminent domain when it was based solely upon the type of corporation which sought to exercise the power. It is important to note, however, that the General Assembly left intact the 1895 statute, § 35-401, which authorizes the power of eminent domain to any corporation organized for the specific purpose of supplying water to municipalities. The legislative intent was to stop the delegation of the power of eminent domain based upon the type of entity formed and base it instead upon the purpose served. Similarly, while neither the Arkansas Business Corporation Act nor the Arkansas Nonprofit Corporation Act confer any inherent power of eminent domain upon corporations created thereunder, such corporations may acquire the power as a result of the purpose served. To illustrate, Ark. Stat. Ann. § 35-210 confers the power of eminent domain on any type of corporation providing telephone and telegraph services, Ark. Stat. Ann. § 35-301 confers the power on a corporation providing electricity. Ark. Stat. Ann. § 35-601 confers the power on companies which develop or convey petroleum or natural gas.

We hold that the corporation formed under provisions of the Rural Development Authority Act and organized for

the purpose of supplying water to municipalities has the power of eminent domain. The remaining issue is whether this multi-use water supply project is "organized for the purpose of supplying any town . . . . with water." *See* Ark. Stat. Ann. § 35-401.

It is undisputed that the primary purpose of this project is to supply the municipalities of Magnolia, Taylor, Waldo, Emerson and McNeil with water. The initial county ordinance, 83-1, recites that the water supply in the county is by wells, that those wells are being depleted and that a water supply lake is needed as a new source of water. The ordinance also provides that a decision on the location of the proposed lake site is to be made solely on the basis of suitability for public water supply purposes. The City of Magnolia was allowed to intervene upon its contention that the corporation was acting on behalf of the city in an effort to construct a water supply lake. Selwyn Whitehead, the chairman of the Magnolia Water Commission, testified that the project is for a much needed water supply. Walker Moore, the Mayor of Magnolia, testified that the project is for water supply.

The proposed large lake will obviously provide incidental benefits, such as flood control and recreation, but the only proof is that the main purpose of the project is for water supply to the municipalities. We hold that the corporation was organized for the purpose of supplying water to the municipalities and, for that purpose, has the power of eminent domain.

Reversed.

HICKMAN, J., and HOLLINGSWORTH, J., dissent.

DARRELL HICKMAN, Justice, dissenting. I can only respectfully suggest that the majority decision and the basis for it takes considerable liberties with the facts and the existing law.

This is a case concerning the power of eminent

domain. The majority's decision is unusual, because it concludes the power exists because the "[p]rincipal proof is that the main purpose of the project is for water supply to municipalities." That statement is contrary to facts found by the trial court and irrelevant to the law of eminent domain.

The issue addressed by the majority was the only issue addressed by the trial court and that is whether the authority exists for the appellants to condemn private property. If the *express* statutory authority exists, then the appellants can condemn property; if not, they cannot. The trial court quite correctly identified the precise issue as being one of the *express* purpose of the condemning authority — not the *main* purpose. Based on the facts presented, the trial court found the purpose to be exactly what it was said to be in all the documents, a lake project "for the purpose of . . . a *multiuse recreation, water supply and flood control lake.* That is what all the documents said, and that is what the trial court found. The majority ignores this finding and finds instead the "main purpose" is to supply water to the City of Magnolia, Arkansas.

The trial court was presented with very little evidence. The documentary evidence consisted of a county ordinance passed by the Columbia County Quorum Court, passed on August 1, 1983, an agreement between Columbia County and five Columbia County cities signed on the 30th of August, 1983, a sample ballot and a county ordinance passed September 12, 1983. According to the abstract of the record, three witnesses testified: R. W. Henderson, the county judge; Selwyn Whitehead, the chairman of the Magnolia Water Commission and the Columbia County Rural Development Authority; and Walker Moore, the acting mayor of the City of Magnolia.

The county judge testified that the purpose of the project was that recited in the county ordinance. He said that "the interlocal agreement was for money alone. It was for the lake project, but they . . . the money and the Interlocal Agreement, we had to have that because the

towns couldn't take their tax money and put it in the lake."

Whitehead only testified that the lake project was for a "much needed water supply" for Magnolia and Columbia County. He said it "benefited the five cities." Moore, the acting mayor of Magnolia, simply said Magnolia needed a future water supply.

In examining the majority's finding that the "principal proof was that the main purpose" of this lake project was for the municipalities, it is important to note that the original county ordinance did not even mention the cities that joined the project. The Ordinance said:

> The water supply for Columbia County (hereinafter County) is currently provided by wells; it is projected that the continued use of such wells will deplete same; there is demonstrated in the County a present and future need for a readily available source of water for residential and industrial use; the cities of the County do not have available to them water related recreational activities upon any lake or river in the County; there is a need for improvement of county services and a need for the acquisition, construction, equipping, and maintaining of a multiuse recreation, water supply and flood control lake (hereinafter referred to as the "project") in the County and a need for a stable source of revenue to finance such local government services; . . . .

The majority opinion recites: "It is undisputed that the primary purpose of this project is to supply the municipalities of Magnolia, Taylor, Waldo, Emerson and McNeil with water." That is exactly what was disputed at the trial and on appeal. In fact, the trial court denied a motion, after entering his decree, to amend the decree to say this fact was undisputed and the primary purpose was for water supply to Magnolia.

All of the documents introduced referred to a multi-

purpose project, as found by the trial court. No witness testified that the reason or purpose of the condemnation was to the contrary. The cities will use the water, but this is not the cities' action to condemn land to supply water. This is an action by the Columbia County Rural Development Authority. One purpose of the several mentioned is for obtaining money for improvements of "county services" and to raise money for these services. What are they? Can cities condemn land to pay for county services? Nowhere in the record is one word of evidence of what the main purpose of the project is. That is simply a conclusion or assumption by the majority.

The trial court made a finding that the purpose was exactly what it was said to be, a multipurpose one for recreation, flood control and water supply. That finding was based on evidence, not speculation. In order to overrule that finding, we must say the trial court was clearly erroneous in his finding. *Loveless* v. *May,* 278 Ark. 127, 644 S.W.2d 61 (1983); ARCP Rule 52. The majority opinion says nothing of why the trial court was clearly wrong in its fact finding. We cannot draw a conclusion for no justifiable reason. That is only one of the problems with the decision in this case, albeit a serious one. The other concerns the law.

Because this is an eminent domain case, we cannot presume or imply any authority that is not expressly and clearly granted in legislation. That is because the power is being used to invade the right of property which is before and higher than constitutional sanctions. *City of Little Rock* v. *Raines,* 241 Ark. 1071, 411 S.W.2d 486 (1967). When the appellants cannot point to express and clear legislative authority to condemn land for the purpose asserted, it lacks that authority. It is conceded that Columbia County Rural Development Authority had not express power of eminent domain because that authority was expressly taken away from it by the legislature in Act 75 of 1967. That is about as clear an expression of legislative intent as is possible. But the appellants argue that either of the appellants can condemn under an Arkansas statute that allows "corporations organized for

the purpose of supplying any . . .city . . .with water. . ."
Ark. Stat. Ann. § 35-401.

The trial court quite properly held that the appellants were not organized for the purpose of supplying water for cities but for building a lake for three purposes: recreation, water supply and flood control. The cities did not join in this effort until after the county created the Columbia County Rural Development Authority and declared its purpose. This was a county project. The cities acknowledged the multi-use purpose in this agreement and there is not any evidence to suggest private property would be condemned only because inhabitants of cities needed water. The City of Magnolia intervened in this suit, but its effort to condemn is tied exclusively to the complaint of the Columbia County Rural Development Authority. Its purpose for condemning is the same — for recreation, flood control, and water supply and for county services — not just for a city water supply.

In a long line of cases, we have set forth an unmistakable standard to apply to legislation in eminent domain cases. In *City of Little Rock* v. *Sawyer*, 228 Ark. 516, 309 S.W.2d 30 (1958), we said:

> The authority for the taking of private property for public use should be *clearly expressed and the statute strictly construed . . . .* Statutes which relate to the power of eminent doman should be strictly construed in favor of the landowner largely because they are in derogation of the common right. This rule is particularly applicable where there is an alleged delegation of power. (Italics supplied.)

*Dowling* v. *Erickson*, 278 Ark. 142, 644 S.W.2d 264 (1983); *Young* v. *Energy Transportation Systems, Inc.*, 278 Ark. 146, 644 S.W.2d 266 (1983); *Loyd* v. *Southwest Arkansas Utilities Corp.*, 264 Ark. 818, 580 S.W.2d 935 (1979); *City of Little Rock* v. *Raines*, 241 Ark. 1071, 411 S.W.2d 486 (1967); *City of Osceola* v. *Whistle*, 241 Ark. 604, 410 S.W.2d 393 (1966); *Hampton* v. *Arkansas State Game and Fish Comm.*, 218 Ark. 757, 238 S.W.2d 950 (1951). When

the legislature says a city can condemn for a water supply, it does not mean for any other reason.

So, rather than liberally construing the law, as the majority does, we are duty bound to take exactly the opposite approach. The majority finds it significant that the legislature did not repeal Ark. Stat. Ann. § 35-401 when it abolished the authority of the Rural Development Authority's power of eminent. domain. I find it neither significant nor relevant. The majority's finding suggests the legislature considered taking away the rights of the people in cities to water and decided not to! A city has no authority, express or implied, to condemn land for flood control or for a recreational lake, yet that is the holding of the majority. If the legislature wants cities to have the authority to condemn land to build multipurpose lakes, it will say so. So far it has not and we cannot read that into law nor do so according to our cases.

Concerning the majority's finding that the "principal evidence is that the main purpose of the lake project is for the cities," I submit that even if that were a relevant legal observation, where is that evidence? Did anyone testify that the cities proposed this project? Did anyone testify that the main purpose of the lake was a water source for any city? Is there any evidence, documentary or testamentary, that contradicts the documentary stated purposes of the lake project? The answer to all questions is no.

What we have is not a question of whether it would be nice for the City of Magnolia to have another source of water; no doubt it would be. What we have is whether the right of property can be taken away on the flimsy grounds suggested by the majority. We do not know what the "main" purpose of the lake project is. We only know that every reference to purpose was that it was for several, not one. To find more is to simply speculate.

With all due respect, the majority has simply taken a liberty with the evidence and assumed or drawn a conclusion that is not warranted or justified and ignored the law.

I think it is significant that the majority opinion does not mention what is really at issue in this case and that is the constitutional right of property. Eminent domain means the taking of private property by the state. What is the constitutional value of that property right? "The right of property is before and higher than any constitutional sanction." Art. 2 § 22 Ark. Const. (1874). But not according to the majority opinion.

I would affirm the decree.

HOLLINGSWORTH, J., joins in this dissent.