The Honorable David Bisbee State Senator 14068 Pyramid Drive Rogers, AR 72758-0116
Dear Senator Bisbee:
I am writing in response to your request for an opinion on the following questions:
 1. Is it permissible for a wastewater treatment district to build the treatment facility outside the boundaries of the district?
 2. Does the power of eminent domain extend beyond the district boundaries and allow the district to cause transmission lines to be laid between the cities comprising the district and a treatment facility outside the boundaries of the district?
RESPONSE
The answer to your first question is unclear. Nothing in the relevant subchapter of the Code directly precludes the district from buying or leasing a site outside its own boundaries for the construction of a treatment facility. However, analogous legislation regarding municipal sewage facilities defines the district's "jurisdiction" as extending only 10 miles outside the corporate limits and permits construction in this extended zone only if locating the facility in the municipality would be infeasible. This legislation appears to reflect a disapproval of out-of-district construction. Based on my review of analogous legislation, it is my opinion that the district could use its power of eminent domain to condemn out-of-district property for a treatment site only if it were infeasible to construct the facility within the district. With respect to your second question, assuming the district was properly formed, it is my opinion the district could condemn property outside the district for the purpose of constructing transmission lines.
You indicate in your request that the wastewater treatment district at issue is being formed pursuant to the Wastewater Treatment Districts Act (the "Act"), A.C.A. § 14-250-101 et seq., and will comprise the cities of Elm Springs, Tontitown, Cave Springs and Highfill. These cities are not contiguous, and it will consequently be necessary to condemn property outside the district's borders to lay transmission lines. You do not indicate in your request whether there is likewise no alternative to constructing the treatment facility outside the district.
Question 1: Is it permissible for a wastewater treatment district tobuild the treatment facility outside the boundaries of the district?
Nothing in the Act directly precludes the district from obtaining and building a treatment facility on property outside the district borders. Indeed, A.C.A. § 14-250-111(5) empowers a district, without any expressed restriction, "[t]o purchase, receive, lease as lessee, or in any other manner acquire, own, hold, maintain, sell, exchange, and use any and all real and personal property, or any interest therein." However, I harbor some doubt that this broad grant of power was intended to permit a district to locate what many consider an aesthetic and olfactory affront outside the district it serves. In my opinion, then, although the issue is unclear, the district probably could construct the facility on out-of-district property obtained through a voluntary sale. Should it do so, however, the district might expose itself to such common-law claims as nuisance brought by local residents not benefited by the facility. I will venture no opinion regarding the district's exposure to such claims, which are better addressed by the city attorneys of the district's member municipalities.
The analysis becomes more complicated if the district proposes to obtain the out-of-district property through condemnation. The power of eminent domain is an attribute of sovereignty, and the procedure for exercising the power is a matter for legislative regulation. City of Little Rock v.Sawyer, 228 Ark. 516, 309 S.W.2d 30 (1958). The State's right of eminent domain is set forth in article 2, § 23 of the Arkansas Constitution. Any delegation of the State's power of eminent domain must be clearly expressed by statute or necessarily implied. Columbia County RuralDevelopment Authority v. Hudgens, 283 Ark. 415, 678 S.W.2d 324 (1984). Statutes governing the power of eminent domain should be strictly construed in favor of the landowner. City of Osceola v. Whistle,241 Ark. 604, 410 S.W.2d 393 (1966).
The scope of a wastewater district's power of eminent domain is set forth in A.C.A. § 14-250-111. Subsection (9) of this statute authorizes the district:
 To have and exercise the right of eminent domain for the purpose of acquiring rights-of-way and other properties necessary in the construction or operation of its property and business in the manner now provided by the condemnation laws of this state for acquiring private property for public use.
(Emphasis added.) The emphasized language in this excerpt dictates that one look beyond the Act itself to determine the extent of the district's right of eminent domain.[1]
Unfortunately, as my immediate predecessor had occasion to note in construing identical language in the Regional Water Distribution District Act, A.C.A. § 14-116-402(10), state law does not specify a single "manner . . . for acquiring private property for public use," prompting General Bryant to observe that "the issue could benefit from legislative or judicial clarification." Opinion 97-206 (attached hereto). For example, A.C.A. § 14-21-808 empowers any drainage district to condemn property outside the district "so as to secure the object of the improvement." Similarly, A.C.A. § 18-15-301(a) confers on municipal corporations the right of eminent domain "to enter upon, take, and condemn private property for . . . lawful purposes."[2] Subsection (b) provides: "It shall be no objection to the exercise of power that the property to be condemned is located in a different county from the municipal corporation." Section 14-92-219(2) of the Arkansas Code, which defines the purposes of suburban improvement districts, empowers a district to construct both a sewage treatment plant and all necessary lines "either within or without the boundaries of the district, if the property will be benefited thereby." Section 14-92-222 grants the district the power of eminent domain to effect these purposes. Section 18-15-202 confers on counties the power of eminent domain to acquire property "for water facilities and sewer facilities," but subjects this power to the condition that it be used "only as a last resort." Even more conservatively, A.C.A. § 14-235-203, which applies to municipal sewage systems, restricts a municipality's jurisdiction to 10 miles outside the corporate limits and prohibits construction of a sewage facility outside the corporate limits if it would be feasible to locate the facility within the city. I am attaching for your convenience Opinion No. 90-024, which addresses whether a city can condemn property in an adjoining city under this statute.
Significantly, the feasibility requirement applicable to municipalities reflects a 1997 amendment to A.C.A. § 14-235-203, suggesting a relatively recent legislative concern that waste treatment facilities be located within the areas they serve. Although the Wastewater Treatment Districts Act contains no comparable express restriction, in my opinion a court might well look to municipal sewer legislation for the most closely related law setting forth the applicable "manner . . . for acquiring private property for public use." If so, assuming a wastewater facility might feasibly be constructed within the district, a court might well decline to condemn land outside the district for that purpose, even though a voluntary sale of the land for that purpose might be permissible.
Question 2: Does the power of eminent domain extend beyond the districtboundaries and allow the district to cause transmission lines to be laidbetween the cities comprising the district and a treatment facilityoutside the boundaries of the district?
I have analyzed the out-of-district location of the facility in the preceding section. For purposes of this discussion, I will assume that the facility, wherever located, is lawfully situated.
In my opinion, assuming the district was properly formed, a court would probably affirm the condemnation of out-of-district property for the purpose of laying necessary transmission lines. Again, the relevant subchapter directs that the power of eminent domain should be exercised in the manner provided by law. A.C.A. § 14-250-111(9). Perhaps the most closely analogous legislation is A.C.A. § 14-92-219, which grants any suburban improvement district the right to condemn out-of-district property for both the treatment plant and lines merely upon a determination that doing so would benefit the district. Similarly, A.C.A. § 18-15-202 affords counties a broad power of eminent domain to acquire water and sewer facilities. Subsection (b) of this statute provides that a county's power of eminent domain should be exercised in accordance with the procedures applicable to municipal water works. Section 18-15-403(a) of the Arkansas Code provides that a condemnation action brought by a municipality should commence "by application to the circuit court of the county where any portion of the property to be condemned is situated" — a provision that implies that a municipality's power of eminent domain with respect to waterworks, and by extension a county's power with respect to sewage facilities and lines, can extend to multiple counties. In my estimation, these statutes, which deal with districts potentially far more wide-ranging in area than a municipality, are more pertinent by analogy to your geographically separated district than the more restrictive statute regarding municipal sewage districts. These analogous statutory provisions would likely apply to your wastewater district, empowering it to condemn property outside its boundaries if necessary. This conclusion seems all the more likely in light of the fact that the condemnation would only be of an easement for underground lines — an encroachment on the landowner's rights less intrusive than above-ground construction.
Finally, notwithstanding the foregoing analysis of the legislation, a court reviewing your proposed plans might be influenced by factual considerations not before me. The court's disposition of this issue might turn, for instance, on whether the need to condemn out-of-district property could have been avoided by defining the boundaries of the district differently. I think that, at the very least, a court would seek a good-faith explanation of how the district came to be configured as it is. A court might further be more inclined to approve the condemnation if the owners of the property to be condemned had been afforded an opportunity to be included in the district. I have not been provided with any facts in this regard. In addition, a court might inquire why this joint enterprise among four geographically separated cities was not undertaken pursuant to the Interlocal Cooperation Act, A.C.A. § 25-20-101et seq., which might have been utilized in conjunction with the laws governing municipal sewage systems. These are factual issues that I lack the information or the statutory authority to address.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JHD/cyh
Enclosures
[1] This need to look outside the Act for guidance seems inconsistent with the declaration in A.C.A. § 14-250-103(a) that "[t]his chapter is complete in itself and shall be controlling."
[2] It is unlikely that a wastewater improvement district qualifies as a "municipal corporation." This term is variously defined in the Code. For instance, A.C.A. §§ 14-143-102 and 14-302-102 both define the term to mean "a city of the first class, a city of the second class, or an incorporated town." By contrast, A.C.A. § 23-19-102 defines the term to mean "a city of the first class, a city of the second class, or a town, incorporated under the laws of this state, or any commission, department, division, or agency thereof, including any municipally owned or controlled corporation, or any improvement district, consolidated public utility system improvement district, or non-profit corporation lessee of such entity." (Emphasis added.) Even the second of these definitions, which includes "any improvement district," provides that the district be owned by a single municipality — a condition not met in this case.