Jamie Pratt, Prosecuting Attorney 13th Judicial District P.O. Box 938 Camden, AR 71711
Dear Mr. Pratt:
I am writing in response to your request for my opinion on a question arising from the following reported facts:
 On July 15, 1983, the Quorum Court of Columbia County adopted Ordinance No. 83-1 providing for the levy of a county-wide 1.00% sales and use tax for the construction of a multi-use recreation, water supply and flood control lake in Columbia County (the "Lake Project") and calling for a special election to approve the Sales and Use Tax, which ordinance was subsequently amended on August 1, 1983, by adoption of Amended Ordinance No. 83-1. The amended ordinance also provided for the creation of the Columbia County Rural Development Authority (the "RDA") for the purpose of administering the development, management, operation and maintenance of the Lake Project. A copy of Amended Ordinance No. 83-1 is attached hereto as Exhibit "A".
 On August 20, 1983, in conjunction with the passage of Amended Ordinance No. 83-1, Columbia County, the City of Magnolia, the City of Taylor, the City of Waldo, the City of Emerson and the City of McNeil entered into an interlocal agreement providing for the construction, acquisition, financing and maintenance of the Lake Project. A copy of the "Columbia County Lake Project Interlocal Agreement" is attached hereto as Exhibit "B". At a special election held August 30, 1983, the voters of the county approved the Sales Use Tax.
 On April 26, 1984, the Magnolia Municipal Water Works (the" MMWW") and the RDA entered into a "Water Supply Development Agreement" whereby the RDA agreed to finance the Lake Project and the MMWW agreed to acquire, construct and equip the Lake Project and to convey title to the RDA upon completion. Further, the MMWW was granted the right to withdraw Magnolia Water without cost. A copy of the" Water Supply Development Agreement" is attached hereto as Exhibit "C".
 On October 8, 1990, the Columbia County RDA and the Magnolia Municipal Water System (the "MWS") entered into a "Water Quality Protection Agreement" which provided for the enforcement of rules and regulations to ensure water quality by RDA, the construction of a water treatment facility by MWS and the shared maintenance of various water supply source related structures by RDA and MWS. A copy of the "Water Quality Protection Agreement" is attached as Exhibit "D".
 Each of the above referenced documents were [sic] adopted or executed for the primary purpose of putting into effect a cooperative effort to finance, acquire, construct and maintain a lake in Columbia County from sales tax revenues to provide for the water needs of the citizens of the County. After the Project was completed, the Quorum Court of Columbia County in Ordinance No. 96-16[,] adopted October 24, 1996, abolished the 1.00% Sales and Use Tax levied to finance, construct and maintain the Lake Project. A copy of Ordinance No. 96-16 is attached hereto as Exhibit" E". The abolishment of this tax had the effect of removing revenues needed by Columbia County to maintain the Lake Project. Since the abolishment of the sales tax, the RDA and MWS have entered into various agreements providing for joint financial contributions to maintain the Lake Project. In negotiating these subsequent agreements for financing the maintenance of the Lake Project, the MWS has relied upon their right to withdraw water at no cost as set forth in the former agreements (Exhibits B, C and D).
Against this backdrop, you have posed the following question:
 Are the Aug. 30, 1983 Columbia County Lake Project Interlocal Agreement (Exhibit "B"), the Apr. 26, 1984 Water Supply Development Agreement (Exhibit "C"), and the Oct. 8, 1990 Water Quality Protection Agreement (Exhibit "D"), each of which were [sic] executed in reliance of [sic] the revenue that would be generated from the 1.00% Sales and Use Tax, still valid and enforceable agreements in light of the abolishment of the 1.00% Sales and Use tax?
You indicate that you are posing this question "to aid Columbia County in fairly and effectively negotiating future contracts with the Magnolia Municipal Water System for financial assistance needed to maintain potable water for the citizens of Columbia County."
RESPONSE
I regret to say that I cannot answer this question, which raises numerous issues of fact that I am neither equipped nor authorized to address. As a matter of long-standing practice, this executive office has declined to address questions that would entail the essentially judicial task of determining the rights of various parties with respect to each other.
Perhaps paramount among the factual inquiries compelled by your request are determining precisely what the quorum court intended in adopting Amended Ordinance No. 83-1 and to what extent realizing that intent might amount to a condition precedent to the various obligations set forth in the related agreements. Significantly, in Columbia County RuralDevelopment Authority v. Hudgens, 283 Ark. 415, 678 S.W.2d 324 (1984), the Arkansas Supreme Court has already addressed as an issue of fact the question of what the quorum court intended in enacting Amended Ordinance No. 83-1, reversing a trial court's conclusion that the stated purpose of the Lake Project exceeded merely supplying water and thus foreclosed any exercise of the power of eminent domain.
In my opinion, your question raises even more issues that only a finder of fact could properly address. As I read your question, you are concerned that the quorum court's action in repealing the sales and use tax might support one or more of the contracting parties in arguing that the various existing agreements have been rendered invalid based upon some contract defense such as impossibility or frustration of purpose. However, determining whether the quorum court was justified in repealing the tax and whether its action in doing so in any sense qualified the obligations of any parties to the various agreements will entail conducting a series of inquiries even more fact-intensive than that undertaken by the trial court and the supreme court in Hudgens. Again, although I would very much like to be of help in this matter, I believe local counsel for the various parties should address and attempt to resolve the concerns set forth in your request, subject to possible review by the courts.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh