(Nos. 37299, 37369-70-71, cons)

THE VILLAGE OF SCHILLER PARK, Appellant, *vs.* THE CITY OF CHICAGO, Appellee.—THE CITY OF CHICAGO, Appellee, *vs.* JOHN ROYUNIEC *et al.,* Appellants.

*Opinion filed November 30, 1962.*

ANCEL, STONESIFER, HOUPT & RILEY, of Chicago, (LOUIS ANCEL, RICHARD V. HOUPT, and FRANCIS X. RILEY, of counsel,) for appellants.

JOHN C. MELANIPHY, Corporation Counsel, of Chicago, (SYDNEY R. DREBIN and ROBERT J. COLLINS, Assistants Corporation Counsel, of counsel,) for appellee.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

The village of Schiller Park brought suit in the circuit court of Cook County to restrain the city of Chicago from condemning, for airport purposes (O'Hare Field), certain land located within the limits of the village. The suit was dismissed and the village appeals. The trial court certified that the validity of an ordinance is involved and that the public interest requires a direct appeal to this court.

In certain other proceedings, brought by the city of

Chicago to condemn parcels of private property in the village for the same purpose, the court denied the owners' traverses and upheld the power to condemn. The owners appeal directly to this court under authority of section 12 of the Eminent Domain Act. (Ill. Rev. Stat. 1961, chap. 47, par. 12.) The condemnation cases present the same issue as the injunction suit and all have been consolidated for disposition here.

The Chicago ordinance providing for acquisition of the land in question was adopted pursuant to section 11—102—1 of the Illinois Municipal Code of 1961, which empowers every municipality with a population of 500,000 or more to establish and maintain public airports upon "any land either within or outside the corporate limits of the municipality." (Ill. Rev. Stat. 1961, chap. 24, par. 11—102—1.) It is further provided, by section 11—102—4, that every such municipality may contract for the removal of all buildings and other structures which may interfere with the location, expansion or improvement of any public airport, or with the safe approach thereto or take-off therefrom by aircraft, "and may acquire by gift, grant, lease, purchase, condemnation or otherwise any private property, public property or property devoted to any public use or rights or easements therein for any purpose authorized by this section and Sections 11—102—1 through 11—102—3." Ill. Rev. Stat. 1961, chap. 24, par. 11—102—4.

The question is whether, under a proper construction of the statute, the city is authorized to take lands situated within the corporate limits of another municipality. Appellants do not dispute the city's authority to take land outside its boundaries which is not within another municipality. Nor do they question the power of the General Assembly, if it sees fit to exercise it, to authorize the taking of land as well which *is* within another municipality. They insist, however, that a power of such an unusual nature is not conferred by the general language employed in the present

statute. They argue that the power would result in hopeless jurisdictional conflicts, and would enable one municipality to destroy or impair the governmental functions of another. It is urged that the statutory language authorizes a municipality to condemn for a public airport within its own limits or in the unincorporated territory outside its limits, but not "to invade the territory and jurisdiction of another municipality," and that if the legislature had intended to confer this extraordinary power it would have expressed the intent by specific language.

We are unable to accept appellants' arguments. The statute is clear in authorizing the taking for airport purposes of "any land either within or outside" the municipality. No exception is expressed for land within some other municipality, nor do we think such an exception can be implied from the statute as a whole. The intent is evident to encourage and facilitate the establishment of airports, and to delegate broad authority in determining the amount and location of land to be taken for such purpose. Cf. *City of Chicago* v. *Vaccarro,* 408 Ill. 587, 597.

A question similar to the one involved here was presented in *Howard* v. *City of Atlanta,* 190 Ga. 730, 10 S.E.2d 190. A Georgia statute, by section 1 thereof, empowered municipalities, counties, and other political subdivisions of the State to acquire land for airport purposes "either within or without the geographical limits of such municipalities, counties, and other political subdivisions." Section 3 provided that property needed for an airport or for the expansion of an airport may be acquired by grant, purchase, lease, or condemnation. The city of Atlanta, in expanding its airport, served condemnation notices on the owners of certain property situated outside of Atlanta and within the limits of the city of College Park. The owners sued for an injunction, contending that the statute should not be construed to authorize one municipality to condemn land within the territorial limits of another mu-

nicipality. The court disagreed, observing that "The grant to every municipality is in effect the right to condemn property within and without its boundaries which is needed in order to establish or expand an airport, and no limitation is added that the property needed shall not be within the confines of another municapility." It was further observed that if the condemning municipality acts in good faith "the fact that the other municipality may be deprived of the right to tax or police the property so taken is merely the express result of the exercise of the power so granted, and does not constitute reason why the act should be construed as denying the power." We think a similar result must follow in the case at bar. The *Howard* case is not substantially distinguishable, as urged by appellants. While there are some differences in the statutory language they are not such as to require a different conclusion.

When the General Assembly intends to limit an extraterritorial power to unincorporated territory, it says so by the use of appropriate language. Thus section 11—101—2 grants power "to vacate any roads, highways, streets, alleys, or parts thereof in unincorporated territory lying within the airport area * * *." (Ill. Rev. Stat. 1961, chap. 24, par. 11—101—2.) The express limitation to "unincorporated territory" in section 11—101—2, and the absence of any such limitation in section 11—102—1, shows that the phrase "any land," appearing in the latter section, was not intended to be so limited.

Appellants insist that an intention not to authorize the power as to incorporated areas is evidenced by the absence of any provision for certain consequences of its exercise, namely that Schiller Park zoning restrictions would be violated, and that if tax revenue from the land is lost the security of outstanding general obligation bonds of the village would be impaired. The argument as to interference with zoning restrictions would be applicable as well to county zoning, and it is undisputed that the power

in question may be exercised in unincorporated territory outside the municipality. The possibility of conflict with local zoning regulations does not indicate a legislative intent to withhold the power.

The loss-of-revenue objection, even if it is considered a material indication of legislative intent, is obviated by section 19.6 of the Revenue Act of 1939. In describing certain kinds of property exempt from taxation, that section provides, as to property owned by a city or village outside its corporate limits, that. "if at the time of the acquisition of property to be used for public airport purposes the city, village, township or school district in which said property is located is indebted for any amount for payment of which it provided for the collection of taxes, the property acquired for public airport purposes shall be subject to taxation for the payment of said indebtedness in the same proportion as said property bore to the taxable property in said city, village, township or school district immediately before the acquisition thereof, according to the last assessment for taxation." (Ill. Rev. Stat. 1961, chap. 120, par. 500.6.) Appellants' argument based on alleged tax difficulties is without merit. Other possibilities of jurisdictional conflict are mentioned in appellants' brief, but we find them to be without sufficient bearing on the question of legislative intention to warrant further discussion.

It may be conceded that the power of one municipality to condemn land in another municipality is an unusual or extraordinary one. But as we have indicated, the legislative intention to confer it is expressed clearly enough, and as is the case with other aspects of the eminent domain power, the courts will afford protection against any abuse thereof. (See *City of Chicago* v. *Vaccarro,* 408 Ill. 587.) It is not contended that there has been an abuse of power here.

No convincing reason has been advanced for reading

into the unqualified statutory language an exception as to territory within some other municipality, and the circuit court was correct in upholding the power to condemn. The order in each case will be affirmed.

*Orders affirmed.*