The Honorable Richard L. "Dick" Barclay State Representative P.O. Box 279 Rogers, AR 72757
Dear Representative Barclay:
This is in response to your request for an opinion on several questions involving a city's exercise of its power of eminent domain. Your questions are restated below and answered in the order posed.
1. Can a city [City A] exercise its power of eminent domain within the boundaries of an adjoining city [City B] for the purpose of extending the sewer line of City A from one part of City A through City B and back into another part of City A?
It must be initially noted that the factual nature of this question, as well as the absence of precedent in Arkansas, precludes a simple "yes" or "no" response. We will, however, provide a general review of the issue in order to provide guidance in the matter.
The power of eminent domain is, foremost, an attribute of the sovereignty, and the procedure for exercising the power is a matter for legislative regulation. City of Little Rock v. Sawyer,228 Ark. 516, 527, 309 S.W.2d 30 (1958). It has also been stated that the power to take property for public use should be clearly expressed, and the statutes strictly construed. Id.; City of Osceola v. Whistle, 241 Ark. 604, 410 S.W.2d 393 (1966).
Our review of the potentially applicable Code sections in this regard has disclosed one body of law which may provide support for a city's proposed exercise of its eminent domain powers within the boundaries of an adjoining city for purposes of extending its sewer lines.[1] Arkansas Code of 1987 Annotated 14-235-201 et seq. and the procedures outlined thereunder pertain to a city's power to "own, acquire, construct, equip, operate, and maintain, within or without the corporate limits of the city or town, a sewage collection system. . . ." A.C.A. 14-235-203(c). With regard to the power of eminent domain, 14-235-210 states:
 Under this subchapter, every municipality shall have power to condemn any works to be acquired and any land, rights, easements, franchises, and other property, real or personal, deemed necessary or convenient for the construction of any works, or for extensions, improvements, or additions to them. In this connection, they may have and exercise all the rights, powers, and privileges of eminent domain granted to municipalities under the laws relating to them.
A.C.A. 14-235-201(a)(1).
This section does not, in itself, vest a city with authority outside its boundaries. Section 14-235-205 must, however, also be considered wherein it states:
(a) A municipality shall have authority to:
 (1) Acquire, by gift, grant, purchase, condemnation, or otherwise, all necessary lands, right-of-way, and property within or without the corporate limits of the city or town. . . . [Emphasis added.]
Section 14-235-203(b) states:
For all purposes of this subchapter, all municipalities shall have jurisdiction for ten (10) miles outside their corporate limits.
While there appears to be no Arkansas case law directly on point, there is general authority for the proposition that the phrase "within or without the corporate limits of the city" authorizes one municipality to condemn lands within the territorial limits of another. See 11 McQuillan, Municipal Corporations 32.66 (3rd ed. 1983). Several jurisdictions have adhered to this construction, notwithstanding the absence of a clear statement by the legislature that this language was intended to authorize the condemnation of lands within another city. The Supreme Court of Illinois, in the case of Village of Schiller Park v. City of Chicago, 26 Ill.2d 278, 186 N.E.2d 343 (1962), rejected an argument that this "unusual or extraordinary power" is not conferred by the general language of the statute empowering certain cities to establish and maintain public airports upon "'any land either within or outside the corporate limits of the municipality.'" 186 N.E.2d at 344, 345 citing Ill. Rev. Stat. 1961, chp. 24, para. 11-102-1. The Illinois court acknowledged and rejected arguments concerning the resultant "hopeless jurisdictional conflicts" and the destruction or impairment of the other city's governmental functions, noting that the language of the statute does not restrict the "taking" powers to unincorporated territory outside the city limits. The court concluded:
 The statute is clear in authorizing the taking for airport purposes of `any land either within or outside' the municipality. No exception is expressed for land within some other municipality, nor do we think such an exception can be implied from the statute as a whole. The intent is evident to encourage and facilitate the establishment of airports, and to delegate broad authority in determining the amount and location of land to be taken for such purpose.
Id., at 344.
The Illinois court cited to a Georgia case, Howard v. City of Atlanta, 190 Ga. 730, 10 S.E.2d 190 (1940), wherein the Georgia Supreme Court similarly ruled that a municipality may, if reasonably necessary, appropriate by condemnation lands within an adjoining municipality for the establishment or expansion of an airport, based upon statutory language authorizing the establishment or expansion "either within or without the geographical limits of such municipalities." 10 S.E.2d at 193. The Georgia court, as noted by the Illinois court in Village of Schiller Park, supra, did emphasize, however, the fact that "some substantial necessity [must] exist for taking the property situated as it is within another municipality." Id. The condemning municipality must act in good faith and there must be a "reasonable necessity" for the appropriation of the property. Id., at 194.
It thus appears that an argument does exist, under a statute such as A.C.A. 14-235-205(a), in favor of a city's exercise of its eminent domain powers within the boundaries of an adjoining city. Legislative intent has been expressed under 14-235-201 et seq. in favor [of] a city's exercise of broad powers both within and outside its boundaries in connection with a municipal sewer system and all necessary appurtenances. Given an appropriate factual scenario, including good faith on the part of the city and a reasonable need for the extension in order to establish a complete and useful sewage system, an Arkansas court might ascribe to the general rule expressed in McQuillan, Municipal Corporations, supra.[2] The question remains, however, ultimately to be decided by the courts.
It is thus apparent that the particular facts and circumstances in each instance must be considered.
2. Can City A extend its sewer line through City B and back into City A by purchasing from the affected property owners in City B the right to lay the City A sewer line across their property?
It may reasonably be concluded that the answer to this question is "yes", if there is an adequate showing of necessity. It has been stated that, according to the rule supported by the weight of authority, a municipal corporation may purchase real property outside its corporate limits for legitimate municipal purposes, in the absence of an express prohibition. 10 McQuillan, Municipal Corporations 28.05 (3rd ed. 1981). This is particularly true under a broad statutory provision conferring power to purchase real estate sufficient `"for the public use, convenience or necessities."' Id. It is significant to note in this regard that in accordance with A.C.A. 14-54-301, municipalities in Arkansas may ". . . acquire and hold real estate, tenements, hereditaments, and such other real and personal property as is necessary and proper for the administration of the affairs of municipal corporations." The authority to buy and hold real estate exists, however, only to the extent that it may be necessary to carry out a municipal purpose. 10 McQuillan, supra, 28.11.
3. If the answer to question No. 1 or 2 is yes:
(a) Could City B acquire the City A sewer line by eminent domain?
 (b) Could City B force City A to allow City B residents to hook onto the City A sewer line?
 (c) Could City B force City A to allow industries located in City B to hook onto the City A sewer line?
It is my opinion that the answer to the first part of this question is "no", if City B seeks to acquire the sewer line for its own purposes, thereby superseding or destroying the prior use. See discussion above. The general rule appears to be that where one municipal corporation has property employed in the rendering of a particular public service, another municipal corporation of the same standing and rank cannot condemn such property for purposes of rendering the same service. 11 McQuillan, Municipal Corporations 32.69 (3rd ed. 1983).
It is my opinion that City B could, reasonably, exercise its power of eminent domain as to the sewer line if its purposes were shown to be consistent with the prior use and did not impair or impede that use. Id., at 32.72. The ultimate outcome of these issues will, however, depend upon the particular facts.
The answer to subparts (b) and (c) of your third question is, in my opinion, generally "no". Ownership, as a general matter, determines the powers of control and regulation. 11 McQuillan, supra, 31.29a. It must also be recognized that a city ordinarily has no duty to furnish sewer service to persons outside its corporate limits. See, generally, 11 McQuillan, supra; City of Little Rock v. Chartwell Valley Ltd. Partnership, 299 Ark. 542,773 S.W.2d 616 (1989). Of perhaps greatest significance, however, is the fact that legislation concerning one city's extension of sewer service to another clearly envisions contracting for this service. Section 14-235-212 authorizes contracts between "owners" and "lessees" ". . . for the service of [sewage collection system or sewage disposal] works to [other cities] and their inhabitants, but only to the extent of the capacity of the works without impairing the usefulness of them to the owners, upon such terms and conditions as may be fixed by the sewer committee or sanitary board and approved by ordinance of the respective contracting parties." A.C.A. 14-235-212(a)(1)(A)(B). This legislation supports the proposition that connections would have to be accomplished by agreement. 4. Assuming that City A can extend its sewer line through City B by acquiring that authority from the property owners in City B or by exercising its right of eminent domain, or by City B exercising its right of eminent domain and subsequently allowing City A to extend the sewer line, can City A and City B enter into an agreement similar to the one attached to this letter and thereby bind the two cities to the terms of the agreement?
I assume, in responding to this question, that the proposed set of facts contemplates City A's ownership and operation of the referenced sewer line, and that City B seeks to connect to the line. It appears that A.C.A. 14-235-212, supra, offers authority for an agreement in this regard. Based upon these assumptions, it may be concluded that the answer to your final question is "yes".
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
[1] Other Code sections must be considered if your questions pertain, specifically, to a municipal improvement district. This authority would, it seems extend to lands, rights-of-way, and property within ten miles of the city.
[2] The eminent domain power would, it seems, be limited to lands lying within ten miles of the city's limits. It must also be recognized, in addressing your first question, that additional issues may arise if the property to be acquired is already devoted to a public use, or if the right-of-way would impair or interfere with a current public use. Ordinarily, property of a municipal corporation that is held for public purposes cannot be condemned by third persons, including other municipalities, where the proposed use will materially impair or interfere with the former use. 11 McQuillan, Municipal Corporations 32.72 (3rd ed. 1983); State ex rel. Maryland Heights Fire Protection District v. Campbell, 736 S.W.2d 383 (1987). It has been stated, however, that subsurface rights could be condemned for uses not inconsistent with the use of the surface. 11 McQuillan, supra, at 32.72.