George COWGER and Irene Cowger, Husband and Wife *v.*
The STATE of Arkansas, Department of Aeronautics; et al.

91-104                                    817 S.W.2d 427

Supreme Court of Arkansas
Opinion delivered October 28, 1991
[Rehearing denied December 9, 1991.]

*Hankins, Hicks & Madden*, by: *Stuart W. Hankins* and *Sherry S. Means*, for appellants.

*Terry R. Ballard; Street & Kennedy*, by: *J. Thomas Kennedy; Winston Bryant*, Att'y Gen., by: *Sarah H. Harberg*, Asst. Att'y Gen.; *Hilburn, Calhoun, Harper, Pruniski & Calhoun, Ltd.*, by: *David M. Fuqua* and *James M. McHaney, Jr.*, for appellees.

STEELE HAYS, Justice. The question presented by this appeal is whether the law of Arkansas gives one municipality eminent domain over land in another municipality. We hold that it does.

The appellants, George and Irene Cowger, own property in the City of Belleville. The City of Danville, in conjunction with the State Department of Aeronautics, filed an action against them in the Circuit Court of Yell County seeking condemnation of 10.56 acres for the construction of an airstrip. The City of Belleville indicated its approval of the project by the adoption of Resolution No. 7-27-87 authorizing the construction of the airport.

The Cowgers brought this action in Pulaski Chancery Court against the cities of Danville and Belleville, the Department of Aeronautics, and officials of both cities. The complaint alleged that Danville was illegally constructing a municipal airport across lands belonging to the Cowgers in violation of various Arkansas statutes and the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983. The Cowgers asked for an injunction and a judgment declaring the actions of the defendants to be unlawful.

The defendants moved for dismissal of the complaint under Ark. R. Civ. P. 12(b)(6), failure to state a claim, and Rule 56, summary judgment. Hearings were held and further amended pleadings were submitted, and the trial court subsequently dismissed all claims.

The Cowgers appeal from the order of dismissal. They first assert the trial court erred in finding that Ark. Code Ann. § 14-360-101 (1987) authorized Danville to exercise its power of eminent domain over lands in Belleville for use of the property as an airport. That section reads:

> Cities of the first and second class and incorporated towns in the State of Arkansas may acquire and own airports or flying fields, which may be located either within or without the corporate limits of the cities or towns.

The following section, Ark. Code Ann. § 14-360-102 (1987), *Acquisition of Property*, provides:

> (a)   The real property for municipal airports or flying fields may be acquired by gift, purchase, or by the exercise of the right of eminent domain, which is granted to cities for this purpose.
>
> (b)   The procedure for the exercise of the right of eminent domain shall be that prescribed by law for the exercise of this power by railroads.

The Cowgers also contend the language of § 14-360-101, providing that cities can acquire and own airports ("within or without the corporate limits of the cities") is an insufficient expression by the legislature to empower one municipality with eminent domain over another, and, in any case, should not be allowed.

It is widely held that cities and other political subdivisions of a state may be authorized to acquire land by eminent domain. 26 Am. Jur. 2d *Eminent Domain* § 19 (1966). And, when acting pursuant to statute, municipalities may condemn lands beyond their borders, even within the boundaries of another municipality. *Id. Schiller Park* v. *Chicago*, 26 Ill.2d 278, 186 N.E.2d 343 (1962); *Howard* v. *City of Atlanta*, 190 Ga. 730, 10 S.E.2d 190 (1940).

As stated in J. Sackman, *Nichols on Eminent Domain* § 2.24 (1985):

> A municipal corporation is a creature of the state designed to operate as a local government over a limited area. Generally a municipal corporation is confined to such area

and is without power to acquire or hold real property beyond its territorial limits unless the power to do so is expressly given by the legislature. . . . The legislature may confer upon a municipality the power to acquire and hold real property outside its territorial limits and in connection with such power to effect such acquisition by eminent domain.

Although the weight of authority leans toward the general principle set forth above, there is a judicial tendency toward the proposition that, unless a municipality is expressly prohibited from so doing, it may acquire real property beyond its territorial limit for legitimate municipal purposes. . . .

Such acquisition outside the corporate limits of the condemnor may be of private property situated in another municipality and has been sustained, also, with respect to property devoted to a public use within another municipality.

To the same effect *see* 11 E. McQuillan, *Municipal Corporations* §§ 32.11, 32.15, 32.16, 32.66, 32.72 (1985).

The Cowgers insist that a grant of the power of eminent domain by one municipality over another should not be allowed, but they cite no authority and our own research has produced none. Rather, as noted above, the general rule is that one municipality can have such power over another. There are cases dealing with whether condemnation will lie where the intended use by the condemnor municipality conflicts with a public use asserted by the condemnee municipality. *See Nichols, supra*; Annotation, *Condemnation—of Public Entity's Land*, 35 A.L.R. Fed. 1293 (1971); 26 Am. Jur. 2d, *supra*. However, in this case we are not confronted with conflicting public purposes, the only question is whether the language of the statute, § 14-360-101, invests Danville with the power of eminent domain over private property within the City of Belleville.

The only authority we find interpreting language similar to our statute fully supports the trial court's conclusions. The statute in *Schiller Park* v. *City of Chicago, supra*, was virtually identical to the pertinent part of § 14-360-101. That statute empowered

every municipality with a population of 500,000 or more to establish and maintain public airports upon "any land either within or outside the corporate limits of the municipality."

The *Schiller* court observed that the statute was similar to one construed in *Howard* v. *City of Atlanta, supra,* where it was held that unless there were words of limitation on the phrase, "within or without the territorial limits of the municipality," the power of eminent domain extended even to other municipalities. The court in *Schiller* approved the following language from *Howard*:

> If the condemning municipality acts in good faith, 'the fact that the other municipality may be deprived of the right to tax or police the property so taken is merely the express result of the exercise of the power so granted, and does not constitute reason why the act should be construed as denying the powers.

Adding:

> It may be conceded that the power of one municipality to condemn land in another municipality is an unusual or extraordinary one. But as we have indicated, the legislative intention to confer it is expressed clearly enough, and as is the case with other aspects of the eminent domain power, the courts will afford protection against any abuse thereof. . . .
>
> No convincing reason has been advanced for reading into the unqualified statutory language an exception as to territory within some other municipality. . . .

■ We find these cases persuasive and, accordingly, we affirm the trial court on this point.

■ The Cowgers also contend that eminent domain requires the consent of the city within whose boundaries the condemned property lies. But we do not find that to be the law. The general rule, as we have seen, is that one municipality may assert eminent domain against lands in another municipality. Beyond that, courts have upheld eminent domain without the consent of the condemnee and even over its objection. *See Schiller Park* v. *Chicago, supra.* Thus, consent of the condemnee

municipality is not a prerequisite to eminent domain.

■ Another point of contention involves the resolution of the City of Belleville authorizing the construction of the airport. The Cowgers maintain the resolution violates that part of art. 12, § 4 of the Arkansas Constitution which denies authority to municipal corporations to pass "any law contrary to the general laws" of the state. The chancellor declined to address the argument because of having held that § 14-360-101 provides the authority relied on for condemnation, thus rendering the argument abstract. For the reasons already noted, we believe that ruling by the trial court was correct.

Another assignment of error concerns the trial court's dismissal of the Cowgers' complaint for failure to state a claim under 42 U.S.C. §§ 1983 and 1988. A number of sub-issues are raised: The Cowgers were deprived of due process, state statutory schemes were violated, and fraud by municipal officials deprived them of property without due process.

■ The due process argument is directed toward the Danville eminent domain action. But, for reasons already seen, the eminent domain proceeding is authorized by statute and no constitutional violation has been demonstrated. If the argument goes to a denial of just compensation, the appellees correctly point out that the Fifth Amendment does not require payment prior to the taking, nor does it necessarily require a pre-taking hearing. *Williamson Co. Regional Planning Commission* v. *Hamilton Bank*, 473 U.S. 182 (1985).

■ The violation of statutory schemes argument has been addressed above and even if there were a violation it would not give rise to a § 1983 cause of action unless the violation were constitutional. *Virden* v. *Roper*, 302 Ark. 125, 788 S.W.2d 470 (1990); *Baker* v. *McCollam*, 443 U.S. 137 (1979).

■ We find no error in the trial court's dismissal of the claim of fraud, as the complaint does no more than declare conclusively that the mayor "defrauded" the plaintiffs, with no attempt to state facts upon which relief could be granted. Ark. R. Civ. P. 12(b)(6).

■■ The Cowgers also raise an argument concerning the nature of the property interest which is the subject of the

condemnation proceeding. The gist of the argument is that § 14-360-102(b) provides that procedure for municipal airport condemnation shall be that prescribed by law for railroads, which is found in Ark. Code Ann. § 18-15-1202 (1987):

> (a)   Any railroad, telegraph, or telephone company, organized under the laws of this state, after having surveyed and located its lines of railroad, telegraph, or telephone, in all cases where the companies fail to obtain the right-of-way over the property by agreement with the owner of the property through which the lines of railroad, telegraph or telephone may be located, shall apply to the circuit court of the county in which the property is situated. Application shall be made by petition to have the damages for the right-of-way assessed, giving the owner of the property at least ten days notice in writing of the time and place where the petition will be heard.

> [The statute provides additional procedures for condemnation]

The Cowgers urge that because of the references in § 18-15-1202, to "right-of-way," Danville is limited to a right-of-way interest in its condemnation under §§ 14-360-101 and 102. We disagree with that interpretation. The substantive grant of eminent domain is clearly contained in § 14-306-101 and 102, that cities may "acquire and own airports" by "eminent domain." The statute then provides succinctly that the procedure shall be as prescribed by law for railroads. The first rule in interpreting a statute is to give the words an ordinary and usually accepted meaning. *Garrett* v. *McDonagh*, 303 Ark. 348, 796 S.W.2d 582 (1990). And where the legislation is clear, we have no authority to construe a statute. *Townsend* v. *State*, 292 Ark. 157, 728 S.W.2d 516 (1987).

For the reasons stated, the order appealed from is affirmed.

CORBIN, J., not participating.