The Honorable Jerry Hunton State Representative 14221 Greasy Valley Road Prairie Grove, AR 72753
Dear Representative Hunton:
This is in response to your request for an opinion regarding whether the City of Fayetteville, to facilitate the expansion of its municipal airport, may exercise its right of eminent domain against Greenland school property.
My research has disclosed that Arkansas municipalities are authorized to exercise the power of eminent domain against land in other municipalities in order to establish a municipal airport. The fact that the property to be condemned is already devoted to a public use might thwart the condemnation, however. As I explain below, determining whether property already devoted to a public use may be condemned for another public use requires a close examination of the proposed use of the property, the current use of the property, the extent to which the proposed use of the property interferes with the current use, and the specificity of the legislative grant of the power of eminent domain involved. As is also noted below, school property has in some instances been condemned for other public uses, such as a public highway, a railroad, and a defense plant. Because of the many fact issues involved, I am precluded from providing you with a definite "yes" or "no" response to your question. Nonetheless, I hope the following general review of this issue will provide you some guidance in the matter.
The power of eminent domain is an attribute of the sovereignty, and the procedure for exercising the power is a matter for legislative regulation. City of Little Rock v. Sawyer,228 Ark. 516, 309 S.W.2d 30 (1958). The State's right of eminent domain is set out in Art. 2, § 23 of the Arkansas Constitution. Any delegation of the State's power of eminent domain must be clearly expressed by statute or necessarily implied. ColumbiaCounty Rural Development Authority v. Hudgens, 283 Ark. 415,678 S.W.2d 324 (1984). Further, statutes governing the power of eminent domain should be strictly construed in favor of the landowner. City of Osceola v. Whistle, 241 Ark. 604,410 S.W.2d 393 (1966).
Arkansas municipalities have been given statutory authority to exercise the power of eminent domain in connection with the maintenance and operation of municipal airports. See A.C.A. §§14-359-112 and 14-360-102 (1987); Selle v. City ofFayetteville, 207 Ark. 966, 184 S.W.2d 58 (1944). Indeed inCowger v. State, 307 Ark. 92, 817 S.W.2d 427 (1991), the Arkansas Supreme Court specifically held that A.C.A. §§14-360-101 and -102 authorize Arkansas municipalities to exercise the power of eminent domain over land in another municipality in order to construct a municipal airport. Cowger v. State,supra (citing Village of Schiller Park v. City of Chicago,26 Ill.2d 278, 186 N.E.2d 343 (1962); Howard v. City of Atlanta,190 Ga. 730, 10 S.E.2d 190 (1940). Based upon Cowger, it seems that the City of Fayetteville would be permitted to exercise its power of eminent domain against property in another municipality in order to expand its municipal airport.
The fact that the property sought to be condemned by the City is already devoted to a public use must also be considered, however. As this office noted in Opinion No. 91-075, a copy of which is enclosed, property devoted to a public use is not ordinarily subject to the power of eminent domain absent specific legislative authorization therefor. See 26 Am. Jur. 2d EminentDomain § 88 (1966). See also 11 McQuillan, MunicipalCorporations § 32.72 (3rd ed. 1983) and, generally,
Annotation, Power of Eminent Domain as Between State andSubdivision or Agency thereof, or as Between DifferentSubdivisions or Agencies Themselves, 35 A.L.R.3d 1293 (1971). The court in Cowger did not have to consider the problem of conflicting public uses, as the property subject to condemnation was private.
In determining whether property already devoted to a public use is subject to the power of eminent domain, the primary consideration is the character of the condemnor. J. Sackman P. Rohan, Nichols on Eminent Domain § 2.2 (Rev. 3d ed. 1985). For example, there is no prohibition against the United States or the State itself exercising the power of eminent domain against public property. When other condemnors are involved, however, the vulnerability of public property to the power of eminent domain depends upon the proposed use of the property. Id. at § 2.2(7). If the proposed use of the property would either destroy the existing use or interfere with that use to an extent tantamount to destruction, the power of eminent domain may not be exercised unless specifically authorized by the legislature or necessarily implied in the legislative grant of the power of eminent domain.Id. at § 2.2. If both uses of the property may exist simultaneously, the power of eminent domain can be exercised without specific legislative authorization to condemn public property; a general grant of the power of eminent domain would suffice. Finally, if the proposed use of the property is similar to the existing use, the exercise of the power of eminent domain is not generally allowed, because it would amount to a mere transfer of the property from one entity to another without any benefit to the public. Id. at § 2.2(9); 29A C.J.S. EminentDomain § 58 (1992). There is also some authority for consideration of the reasonable necessity of each use in making the determination. Id.
In the instant situation, to determine whether the Greenland school property in question is subject to condemnation by the City of Fayetteville, the extent to which the proposed use of the property would interfere with the current use would have to be considered. If it were determined that the proposed use would effectively destroy the current use of the property, the condemnation should not be permitted unless the eminent domain statutes referred to above, A.C.A. §§ 14-360-101 and -102, are found to be specific enough to authorize the condemnation despite that fact. If it were determined that the two uses could exist simultaneously, then the proposed condemnation would most likely be permitted pursuant to §§ 14-360-101 and -102. It seems unlikely that the two uses would be found to be so similar that the condemnation would be viewed as a mere transfer of the public use from one entity to another and, as such, prohibited. Finally, some consideration should probably be given to the reasonable necessity of each use. Determining whether this particular "public use" property should be condemned necessitates the consideration of several factual questions that this office is neither equipped nor authorized to undertake. A court would have to make this determination, based upon the facts presented to it. I would merely point out that my research disclosed cases from other jurisdictions in which school property was allowed to be taken under eminent domain for other public uses. See
26 Am.Jur. 2d Eminent Domain § 105 (1966); Carroll County Board ofEducation v. Caldwell, 178 Tenn. 671, 162 S.W.2d 391 (1942) (school property condemned for defense plant); Covington Countyv. State Highway Comm'n, 188 Miss. 274, 194 So. 743 (1940) (school property condemned for public highway); East Hampton v.County Comm'rs of Hampshire, 154 Mass. 424, 28 N.E. 298 (1891) (school property condemned for public highway); Rominger v.Simmons, 88 Ind. 453 (1882) (school property condemned for public highway); Indiana Cent. R. Co. v. State, 3 Ind. 421
(1852) (school property condemned for railroad).
You have asked alternatively whether the Greenland School District might exercise its right of eminent domain against the airport's property. All school districts in Arkansas are granted the power of eminent domain and are specifically authorized to take private property for school purposes. See A.C.A. §6-13-103(a) (Supp. 1991). Applying the same analysis as was used above, the answer to your question would appear to depend, first, upon a court's determination of whether this grant of the power of eminent domain authorizes a school district to condemn property located beyond its boundaries. For a closer look at the issue of whether a municipality may exercise its right of eminent domain against property located beyond its territorial limits, see 29A C.J.S. Eminent Domain § 24(c) (1992); 11 McQuillan,Municipal Corporations § 32.66 (3rd ed. 1983). Second, it would depend upon a court's determination of whether the condemnation could occur despite the fact that the subject property is already devoted to a public use. Again, the fact issues involved make it difficult to anticipate how a court would answer these questions. I should point out, however, that it has been held that because a particular location is not usually essential for school purposes, as a general rule, land already devoted to a public use cannot, in the absence of express authority, be taken for school purposes by eminent domain. 26 Am. Jur. 2d Eminent Domain § 105 (1966).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Catherine Templeton.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
Enclosure