The Honorable Dean Elliott State Representative 136 Apple Bloom Loop Maumelle, AR 72113-6031
Dear Representative Elliott:
I am writing in response to your request for my opinion on the following question:
 Currently the City of North Little Rock owns certain sewer lines and easements within the city limits of Sherwood. The lines were dedicated to North Little Rock from the Sewer Improvement District (SID). Question 1: Can the City of Sherwood exercise the right of eminent domain over the lines and easements within the city limits of Sherwood? Question 2: If so, must Sherwood pay North Little Rock for the value of the property?
RESPONSE
In my opinion, the answer to your first question is no. My response moots your second question, which, in any event, could only be answered by drawing factual conclusions I am neither equipped nor authorized to offer.
Question 1: Can the City of Sherwood exercise the right of eminent domainover the lines and easements within the city limits of Sherwood?
Your question is essentially the same as one addressed by my predecessor in the enclosed Op. Att'y Gen. 90-024. The legal analysis in that opinion still applies, although I have offered some additional constitutional and statutory commentary. I am further enclosing Ops. Att'y Gen. 91-075 and 93-115, which likewise bear on your request.
To answer your question, a court will first need to determine whether property already devoted to a public use is subject to the power of eminent domain. I assume, although you do not indicate in your request, that North Little Rock is currently using the easement and lines for waste management. Also, I can only assume that Sherwood wants to condemn the easement and lines for its own use as sewers. No Arkansas case law has directly addressed a dispute involving this issue, although the Arkansas Supreme Court has ruled that a municipality may condemn private
property in another jurisdiction for the purpose of constructing an airport. Cowger v, State, 307 Ark. 92, 817 S.W.2d 427 (1991). The Court noted in Cowger the existence of case law in other jurisdictions dealing with "whether condemnation will lie where the intended use by the condemnor municipality conflicts with a public use asserted by the condemnee municipality" — an issue it declared was not before it. Id. at 95.
However, as noted above, this issue is, in part, the subject of Op. Att'y Gen. 90-024, with which I fully concur. The opinion aptly summarizes the pertinent statutory law as follows:
 Arkansas Code of 1987 Annotated 14-235-201 et seq. and the procedures outlined thereunder pertain to a city's power to "own, acquire, construct, equip, operate, and maintain, within or without the corporate limits of the city or town, a sewage collection system. . . ." A.C.A. 14-235-203(c). With regard to the power of eminent domain, 14-235-210 states:
 Under this subchapter, every municipality shall have power to condemn any works to be acquired and any land, rights, easements, franchises, and other property, real or personal, deemed necessary or convenient for the construction of any works, or for extensions, improvements, or additions to them. In this connection, they may have and exercise all the rights, powers, and privileges of eminent domain granted to municipalities under the laws relating to them.
A.C.A. 14-235-2[10](a)(1).
. . . Section 14-235-205 must also be considered wherein it states:
(a) A municipality shall have authority to:
 (1) Acquire, by gift, grant, purchase, condemnation, or otherwise, all necessary lands, right-of-way, and property within or without the corporate limits of the city or town. . . .
In a highly instructive footnote, my predecessor addressed the thorny issue of conflicting public uses:
 [A]dditional issues may arise if the property to be acquired is already devoted to a public use, or if the right-of-way would impair or interfere with a current public use. Ordinarily, property of a municipal corporation that is held for public purposes cannot be condemned by third persons, including other municipalities, where the proposed use will materially impair or interfere with the former use. 11 McQuillan, Municipal Corporations 32.72 (3rd ed. 1983); State ex rel. Maryland Heights Fire Protection District v. Campbell, 736 S.W.2d 383 (1987). It has been stated, however, that subsurface rights could be condemned for uses not inconsistent with the use of the surface. 11 McQuillan, supra, at 32.72.
My predecessor applied the above principles to conclude that City B could not condemn sewer lines within its boundaries but owned by City A "if City B seeks to acquire the sewer line for its own purposes, thereby superseding or destroying the prior use." He further concluded that if the proposed condemnor's intended use is the same as the proposed condemnee's, the principle of eminent domain will not support a condemnation:
 The general rule appears to be that when one municipal corporation has property employed in the rendering of a particular public service, another municipal corporation of the same standing and rank cannot condemn such property for purposes of rendering the same service. 11 McQuillan, Municipal Corporations 32.69 (3rd ed. 1983).
Accord J. Sackman P. Rohan, Nichols on Eminent Domain § 2.2[9] (rev. 3d ed. 1985) (If the proposed use of the property is similar to the existing use, the exercise of the power of eminent domain is not generally allowed, because it would amount to a mere transfer of the property from one entity to another without any benefit to the public); 29A C.J.S. Eminent Domain § 75 (1965). This "same-use" prohibition on the exercise of eminent domain against a sister-municipality in itself precludes Sherwood from undertaking the proposed condemnation.
My conclusion is reinforced by express constitutional and statutory limitations placed on municipalities' powers of condemnation. As this office noted in Op. Att'y Gen. 91-075:
 The power of eminent domain is an attribute of [State] sovereignty, and the procedure for exercising the power is a matter for legislative regulation. City of Little Rock v. Sawyer, 228 Ark. 516, 309 S.W.2d 30
(1958). The State's right of eminent domain is set out in Art. 2, § 23
of the Arkansas Constitution. Any delegation of the State's power of eminent domain must be clearly expressed by statute or necessarily implied. Columbia County Rural Development Authority v. Hudgens, 283 Ark. 415, 678 S.W.2d 324 (1984). Further, statutes governing the power of eminent domain should be strictly construed in favor of the landowner. City of Osceola v. Whistle, 241 Ark. 604, 410 S.W.2d 393
(1966).
(Emphasis added.) As indicated in the highlighted excerpt above, a municipality's power of eminent domain extends only so far as the legislature has dictated. With respect to the power of eminent domain for municipal sewer systems, A.C.A. § 14-235-210(a)(3) provides: "Proceedings for such appropriation of property shall be under and pursuant to the provisions of §§ 18-15-301—18-15-303 and any acts supplemental to it." The first of these statutes initially affords municipalities the power of eminent domain to condemn "private property" to effect any "lawful purposes." A.C.A. § 18-51-301(a) (emphasis added). Subsection (c) of the statute prohibits municipalities from condemning private cemeteries for any purpose other than creating "impounding lakes" for water supplies and expressly locates beyond any power of condemnation cemeteries owned by a unit of government. Subsection (d) affords municipalities a limited power to condemn railroad rights-of-way, state lands and water, roads, streets and alleys, subject to the conditions that the use be restricted to water lines, that the lines be buried and that ordinary usage not be impeded. Section 18-15-302 sets forth the conditions for removing bodies and markers from a condemned cemetery and reintering the bodies in new sites. Finally, A.C.A. § 18-15-303 sets forth the procedure for effecting the condemnation of "private property" pursuant to the preceding statutes. (Emphasis added.)
In my opinion, nothing in these statutes can be read as authorizing the condemnation by one municipality of sewage lines and property owned by another.[1] This conclusion draws support from A.C.A. § 14-235-212, which sets forth an elaborate mechanism for contracting among political subdivisions for the sharing, when feasible, of sewage facilities. Read in its entirety, the subchapter dealing with sewage systems envisions a process of only necessary condemnation of private properties and a process of municipal cooperation to minimize disruptions in service. I find no authority for the proposition that one municipality can avoid this cooperative enterprise by simply appropriating a neighbor's capital infrastructure.
Question 2: If the easements and lines are subject to condemnation, mustSherwood pay North Little Rock for the value of the property?
This question is moot in light of my answer to your previous question.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
Enclosures
[1] I should point out that the Court in Cowger did not discuss the statutory restrictions in condemnation disputes between cities. As previously noted, it merely remarked in passing that conflicting public uses might become an issue in condemnation procedures and observed that some cases and commentators have approved balancing such conflicts "in determining whether condemnation will lie." 307 Ark. at 95.