
# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-14-289

| | |
|---|---|
| LEON WILMOTH, MANAGER, SAFARI REAL ESTATE, LLC<br><br>APPELLANT<br><br>V.<br><br><br>SOUTHWEST ARKANSAS UTILITIES CORPORATION<br><br>APPELLEE | **Opinion Delivered** March 11, 2015<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. CV-2012-1456-2]<br><br>HONORABLE BRAD KARREN, JUDGE<br><br>REVERSED AND REMANDED |

### WAYMOND M. BROWN, Judge

This appeal is from a judgment awarding compensation for the condemnation of a utility easement. On appeal, the landowner contends the circuit court erred by (1) entering an order of possession, ex parte, without any notice to it and thereby denying it the opportunity to respond or request a hearing; (2) excluding the testimony of certain witnesses who could not directly relate their testimony to the fair market value of the property. We find merit in the landowner's second point. Accordingly, we reverse and remand for a new trial.[1]

The condemned property is part of a 460-acre tract where a wildlife sanctuary for exotic animals and a visitor park are operated. On August 14, 2012, appellee Southwest Arkansas Utilities Corporation (SWEPCO) filed a complaint against appellant Safari Real Estate, LLC, and its manager, Leon Wilmoth, to obtain a utility easement across Safari's

---

[1]We deny Safari's motion to take judicial notice of certain actions taken before the Public Service Commission after this appeal was filed, without prejudice to the issue being raised in the circuit court on remand.

property for purposes of building a transmission line. SWEPCO deposited $36,000 into the court's registry as just compensation. An order of possession was entered by the Benton County Circuit Court on August 21, 2012. Safari answered and later withdrew the funds from the court's registry.

In advance of trial, SWEPCO filed a motion in limine seeking to prevent Safari from presenting evidence on topics other than the fair market value of the property. SWEPCO also sought to preclude litigation over the route of the transmission line as decided by the Public Service Commission (PSC). The circuit court held a hearing on the motions in limine just prior to the start of the trial. The court excluded certain of Safari's witnesses, ruling that the only proper evidence was that related to the fair market value of the property taken.

At trial, Safari's appraiser, Thomas Rife, testified that Safari owned approximately 462 acres, divided into four quadrants, to keep the various animals separated. In his calculations, he valued the raw land at $2,000 per acre, with another $1,500 per acre for improvements such as roads, fencing, ponds, and maintaining the grounds. He did not consider any barns or other buildings in his calculations. He said that SWEPCO was taking 9.17 acres for its transmission line through the middle of Quadrant Four. He opined that the remaining 104.83 acres in Quadrant Four could no longer be used as a wildlife park because of U.S. Department of Agriculture regulations concerning wild and exotic animals. He calculated the damages from the taking at $399,000. This included $32,000 for the 9.17 acres in the easement and $367,000 for the damages to Quadrant Four.

Tom Reed, SWEPCO's appraiser, testified that Safari owned approximately 350 acres

while the entire Wilmoth family holdings totaled over 600 acres. He valued the property at $2,500 per acre before, and $2,395 after, the taking, for a total of $37,000 in damage to the property's market value. According to Reed, a study of a semi-rural area near Fayetteville indicated that the maximum extent of any harm to remaining property was no farther than 225 feet on either side of a power-line easement. He used this figure in calculating the value of Safari's remaining property after the taking. He disagreed with Rife that Quadrant Four was rendered useless by the taking of the easement, asserting that it could still be used for agricultural purposes.

The jury, in a verdict signed by nine jurors, awarded Safari $87,539 for the taking of its property. After giving SWEPCO credit for the compensation deposited into the registry at the commencement of the case, the judgment amount was $50,939, together with prejudgment interest of $3,402.45. This appeal followed.

Safari's first point is that the circuit court erred in issuing the order of possession on an ex parte basis, thereby violating Safari's due-process right to contest the seizure of its property, the amount of the deposit, and the manner, timing, and necessity of the taking. There is no merit to this point.

Both the United States Supreme Court and the Arkansas Supreme Court have held that the Fifth Amendment to the United States Constitution does not require payment prior to the taking nor does it necessarily require a pre-taking hearing.[2] All that is required is that

---

[2]*Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985); *Cowger v. Ark. State Dep't of Aeronautics*, 307 Ark. 92, 817 S.W.2d 427 (1991); *Cannon v. Felsenthal*, 180 Ark. 1075, 24 S.W.2d 856 (1930).

a "reasonable, certain and adequate provision for obtaining compensation" exist at the time of the taking.[3] Here, the statutory scheme calls for a deposit into the registry of the court and for a jury to determine the amount of the compensation.[4] Safari fully participated in the case by filing an answer to the petition, withdrawing the funds from the court's registry, and responding to SWEPCO's motion in limine with one of its own, all without objecting to the procedure by which SWEPCO obtained possession.

This brings us to Safari's arguments concerning the circuit court's rulings that prevented it from submitting evidence that was not directly related to the fair market value of the easement taken by SWEPCO. On appeal, we will not reverse a circuit court's ruling on the admission of evidence absent an abuse of discretion.[5] An abuse of discretion is a high threshold that does not simply require error by the circuit court, but requires that the court act improvidently, thoughtlessly, or without due consideration.[6]

At the hearing on the motion in limine, Safari sought to have its witnesses testify as to elements of severance damages to the remaining tract and whether it could continue to be used as a wild-animal safari park. The circuit court excluded the testimony, ruling that the only proper testimony was that concerning the before-and-after value of the property. In doing so, the court inadvertently took an unduly narrow view of what proper damages are

---

[3] *Williamson Cnty.*, 473 U.S. at 194.

[4] Ark. Code Ann. §§ 18-15-506, 18-15-508.

[5] *Ford Motor Co. v. Washington*, 2013 Ark. 510, 431 S.W.3d 210.

[6] *Id.*

in a condemnation case. It did so by not considering how certain testimony, although not directed specifically at the property's fair market value, may nevertheless be relevant in determining the fair market value. As discussed below, there is no requirement that each witness be able to directly relate his or her testimony to the fair market value of the property.

After the court's ruling excluding the witnesses, Safari proffered the testimony of Leon Wilmoth, Todd Hawkins, and Michael Cordeiro as to the costs of various improvements that Safari considered necessary as a result of the taking. Wilmoth testified that, as a result of the loss of the use of Quadrant Four for the park, it would be necessary to acquire a replacement for Quadrant Four and then build replacement barns and holding pens, fence some 2.5 miles of substitute acreage, and build replacement reservoirs. Hawkins gave an estimate of approximately $298,000 for construction of two standard iron buildings, measuring 40' x 300'. On cross-examination, he could not say whether the buildings were required.

Likewise, Cordeiro, a dirt contractor, gave an estimate of approximately $332,000 to rebuild the roads, to build a new pond and dam, and to clear for the fence and barn. He estimated the cost to clear the fences at $2,200 an acre. On cross-examination, he also could not say whether such improvements were necessary for Safari to operate as a drive-through safari.

Wilmoth's testimony should have been admitted because it laid the foundation for the contractors' testimony. It was also the evidentiary foundation for Thomas Rife's conclusion that Quadrant Four was not economically viable as a park. While the cost of such

improvements is an element to consider in determining compensation,[7] neither Hawkins nor Cordeiro offered any testimony linking such improvements to the value of the property after the taking. In an identical situation, our supreme court explained why the exclusion of this testimony was error:

> "After the proof [by a building expert] is presented, it is important to remember that the building expert cannot testify to market value. He knows what it would cost to reproduce the improvement and he should not hesitate to admit his lack of knowledge of what the improvement could be sold for. The real estate witness testifies as to the amount the improvement enhances the market value of the land."[8]

However, such prospective expenditures are not the measure of damages but are only an aid in determining the difference in the before-and-after value of the property.[9]

Our supreme court has long held that testimony concerning the danger of transmission lines and the frightening of animals on the property is a proper element of damages in condemnation cases.[10] The rationale for such a rule is that if the existence of transmission lines exposes livestock to dangers or frightens the livestock, it has the effect of depreciating the value of the remaining lands not taken because the land can no longer be used as before and

---

[7] *Ark. State Hwy. Comm'n v. Speck*, 230 Ark. 712, 324 S.W.2d 796 (1959).

[8] *Wesoc Corp. v. Ark. State Hwy. Comm'n*, 257 Ark. 72, 74, 514 S.W.2d 212, 214 (1974) (quoting Alfred Jahr, *Law of Eminent Domain: Valuation and Procedure*, § 157 (1953)) (alteration in *Wesoc*).

[9] *Ark. State Hwy. Comm'n v. Ptak*, 236 Ark. 105, 364 S.W.2d 794 (1963); *Speck*, *supra*.

[10] *See Baucum v. Ark. Power & Light Co.*, 179 Ark. 154, 15 S.W.2d 399 (1929); *Fayetteville & Little Rock Ry. v. Combs*, 51 Ark. 324, 11 S.W. 418 (1889); *Little Rock, Miss. River & Tex. Ry. Co. v. Allen*, 41 Ark. 431 (1883).

must be considered.[11] Our supreme court has also recognized the rule that damages for impairment of view are compensable.[12]

For such consequential damage, Safari is entitled to "just compensation," with the extent of the damage to be established by the opinions of witnesses who show themselves to be acquainted with the property and with the effect of the construction and operation of the transmission upon it. Such testimony must, of course, be within the general rule that the damages claimed must be direct and certain, and such as may be reasonably expected to follow from the invasion of the premises by SWEPCO.

This does not mean that all of Safari's proffered testimony was admissible. For example, the rebuttal testimony of Leon Wilmoth concerning one gate being left open for nine days was not admissible because any severance damages for the diminution in value of the remaining property caused by leaving gates open is conjectural at best in that they are not reasonably expected to follow from the appropriation of the Safari property.[13] All such matters are contingencies which, if they ever happen, are the proper subject of a damage suit.[14]

Similarly, we do not find the proffered testimony of Delton Williams admissible. Williams testified that he was the broker involved in the contract for Safari to purchase 160

---

[11]*See Baucum*, 179 Ark. at 162, 15 S.W.2d at 402; *Combs*, 51 Ark. at 327, 11 S.W. at 419.

[12]*Miller Levee Dist. v Wright*, 195 Ark. 295, 111 S.W.2d 469 (1937).

[13]*See Kamo Elec. Co-op, Inc., v. Dicke*, 296 S.W.2d 905 (Mo. Ct. App. 1956); *Mo. Power & Light Co. v. Creed*, 32 S.W.2d 783 (Mo. Ct. App. 1930).

[14]*Creed*, 32 S.W.2d at 787.

acres near its property for $778,000. He also testified that there were three other comparable sales near the Safari property in excess of $3,500 per acre. Safari argues that the testimony and contract were relevant to establish the per-acre price of the land taken. However, Williams was not engaged to give a comprehensive opinion as to the before-and-after value of the property taken. Nor did he show any familiarity with the Safari property. When opinion testimony as to real estate values is based only on comparable sales, it should be stricken for want of a reasonable basis when it is shown that no sale considered by the witness was of land comparable to that involved in the trial.[15] In such cases, the jury's consideration of a naked opinion of value of an expert witness which is not based upon a recognized method of appraisal should be approached with caution and permitted only in unusual cases.[16]

Because of the truncated nature of the other proffered testimony, we express no opinion as to its admissibility. We reverse and remand for a new trial.

Reversed and remanded.

GLADWIN, C.J., and KINARD, J., agree.

*Sandy S. McMath*, for appellants.

*Greenhaw & Greenhaw*, by: *William Greenhaw*, for appellee.

---

[15]*Ark. State Hwy. Comm'n v. First Pyramid Life Ins.*, 269 Ark. 278, 602 S.W.2d 609 (1980).

[16]*Ark. State Hwy. Comm'n v. Steen*, 253 Ark. 908, 489 S.W.2d 781 (1973).