BRANDON J. HARRISON, Judge
Moses Watts, Sr., and Ruby Watts appeal a $1,995 judgment representing just compensation for the condemnation of a utility easement over their property. A timeline is helpful to understand their arguments against the condemnation process.
• June 1 (2015) . Entergy Arkansas, Inc., filed a petition in circuit court, titled an "application," to condemn a portion of the Wattses' property. The petition stated, in part, that Entergy engineers had determined a permanent utility easement was needed across the Wattses' property and that an agreement with the property owners could not be reached.
*776 • June 15 . The circuit court granted Entergy an order of immediate possession of the easement. Entergy deposited $1,995 into the court's registry-what it considered to be the fair-market value of the property needed for the use. See Ark. Code Ann. § 18-15-508 (Repl. 2015) (When an electric-utility company deposits money in compliance with the order of the court, the company can enter the land and proceed with its work before a jury trial on just compensation.).
• June 27 . Clay Nealy, a process server for The Covert Connection, LLC, personally served Moses Watts, Sr., with the June 1 petition and June 15 order. Substituted service was made on Ruby Watts. The summonses issued in the case stated that Ruby and Moses had thirty days to file a written answer to the lawsuit and "attached complaint."
• July 6 . Proof of service of the summonses was filed in the circuit court.
• July 21 . The Wattses filed a "Motion for Dismissal of Application for Condemnation of Lands And For Immediate Possession Thereto." They argued, among other things, that the circuit court's order of immediate possession was "illegal," "unreasonably wrong," and a violation of their constitutional rights under the Fourteenth Amendment because "the Defendants [the Wattses] were served with Motion and Order at the same time."
• July 23 . Entergy responded to the motion to dismiss and argued that it had complied with all Arkansas laws allowing it to pursue eminent-domain rights to install and maintain electrical lines, poles, and facilities.
• February 19 (2016) . Ruby Watts argued during a hearing on the Wattses' motion to dismiss that the Wattses were denied due process when the June 1 petition was filed and the immediate order of possession was given "seven, eight, nine days later." "[W]e were not afforded the ten-day notice to come in and object or answer [the June 1 petition] ... We didn't get that right ... due process under the Fourteenth Amendment."
• February 22 . The circuit court denied the Wattses' motion to dismiss. The court wrote that Entergy complied with "the applicable statutory law ... Ark. Code Ann. §§ 18-15-501, et seq." It concluded that the "due process rights of Moses Watts, Sr. and Ruby Watts have not been violated."
• August (2017) . A Jefferson County jury rendered a verdict on just compensation for the property Entergy took, and the circuit court entered a judgment according to the jury's verdict. Moses and Ruby Watts appealed.
The Wattses' first point on appeal is hard to decipher, but we read it to contend that the Wattses' due-process rights were violated because the circuit court issued the June 15 order of immediate possession on an ex parte basis and that they did not get the ten-day notice required in Ark. Code Ann. § 18-15-504(a). The Wattses also argue that they had a right to request a preliminary hearing and that it is contrary to public policy and judicial integrity to permit private utilities to delay service of condemnation-related papers to facilitate ex parte seizures of property.
We begin with the due-process concerns. Procedural due process generally includes the right to notice and an opportunity to be heard before a person may *777 be deprived of a significant property interest. U.S. Const. amend. V, XIV ; Sniadach v. Family Fin. Corp. , 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). In a condemnation proceeding, due process does not require the entity condemning the property to give the landowner notice in advance of the taking. Bragg v. Weaver , 251 U.S. 57, 40 S.Ct. 62, 64 L.Ed. 135 (1919) ; see also Wilmoth v. Sw. Ark. Util. Corp. , 2015 Ark. App. 185, at 3-4, 457 S.W.3d 694, 697-98. The constitutional minimum is that the owner be given an opportunity to be heard at some stage of the proceeding and reasonable notice of the pending suit. See Mullane v. Cent. Hanover Bank & Trust Co. , 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (holding that due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); Walker v. City of Hutchinson, Kan. , 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956) (holding that notice by publication in an eminent-domain action, even when in rem, is constitutionally inadequate when reasonable alternatives would provide better notice to the owner and interested parties).
We conclude that no due-process violation occurred. The Wattses received personal notice of the lawsuit when Entergy's petition for condemnation and the court's ex parte order were personally handed to Moses Watts and substituted service was given to Ruby Watts. Though it was (understandably) counterintuitive to the Wattses, that the order of possession was obtained ex parte is not itself a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Wilmoth , 2015 Ark. App. 185 at 3-4, 457 S.W.3d at 697-98. While the order of possession was entered before the Wattses received any notice, the circuit court heard the property owners' arguments during several pretrial hearings. And the Wattses were permitted a jury trial during which they presented evidence on why they were not being justly compensated for Entergy's taking. All this occurred before a final judgment was entered in the case. The constitutional minimum was met, and the circuit court correctly ruled that there were no due-process violations.
To the extent the Wattses argue here that we should reverse the adverse judgment because they did not receive the ten-day notice required under the statute, we also affirm. Here is the part of the statute at issue:
(a) If an electric utility, having surveyed and located its line under the power conferred by this section... fails to obtain, by agreement with the owner of the property through which the line may be located, the right-of-way over the property, it may apply by petition to the circuit court of the county in which the property is situated to have the damages for the right-of-way assessed, giving the owner of the property at least ten (10) days' notice in writing by certified mail, return receipt requested, of the time and place where the petition will be heard.
Ark. Code Ann. § 18-15-504(a).
Subsection 504(a) is part of a rather extensive legislative scheme allowing private corporations to condemn property for a public purpose. See Ark. Code Ann. § 18-15-503(b)(1). A condemning authority like Entergy has broad discretion to determine the necessity of the taking of private land; but it may not condemn more property than is necessary, must use it for a public purpose, and must pay the owner just compensation for the taking. Ark. Const. art. 2, § 22. Each of Arkansas's *778 eminent-domain statutes may require notices and procedures that depart from the Arkansas Rules of Civil Procedure. There has been a call for the legislature to clarify the "patchwork of statutes on eminent domain." City of Fort Smith v. Carter , 364 Ark. 100, 110, 216 S.W.3d 594, 601 (2005).
As we mentioned earlier, the Wattses argued to the circuit court that they did not receive the type of notice related to Entergy's initial petition that Ark. Code Ann. § 18-15-504(a) requires. Specifically, they complain that the ex parte order of possession was entered before they received notice of the lawsuit. At no time did the Wattses challenge Ark. Code Ann. § 18-15-504(a) as being unconstitutional, nor did they argue that the June 27 personal service of process was invalid. Like the circuit court, we accept Entergy's position that subsection 504(a)'s ten-days' notice of the "time and place where the petition will be heard" refers to a trial date. See Ark. Const., art. 12, § 9 (Arkansas Constitution gives landowners a right to a jury trial when a private corporation is the condemning authority). Entergy could not provide notice of a trial date to the Wattses when it initially served the landowners because the trial date had not yet been scheduled. It is undisputed, however, that the Wattses knew about Entergy's petition more than ten days before the jury trial convened; in fact, the trial was held more than two years after Entergy had filed its initial petition in the circuit court. Because the Wattses received notice of the jury-trial date more than ten days in advance of the trial, we see no reversible error and affirm the circuit court's order.
At the end of their brief filed in this court, the Wattses challenge the evidence supporting the jury's verdict as being "manifestly insufficient" for two reasons. First, the jury did not award damages for land that was severed from the rest of the property by the easement; second, the jury did not give separate compensation for the value of the timber within the easement.
When a private corporation takes property through the process of eminent domain, damages are properly awarded on the full fair-market value for the easement taken, plus any damage occurring to the remainder of the property. Arkansas Louisiana Gas Co. v. Howell , 244 Ark. 86, 90, 423 S.W.2d 867, 869 (1968). A landowner must prove by a preponderance of the evidence the amount of just compensation. Prop. Owners Imp. Dist. No. 247 of Pulaski Cty. v. Williford , 40 Ark. App. 172, 181, 843 S.W.2d 862, 868 (1992). We review the jury's verdict to see if it is supported by substantial evidence. Ark. St. Hwy. Comm'n v. Taylor , 269 Ark. 458, 466, 602 S.W.2d 657, 661 (1980).
In this case, the circuit court granted Entergy's motion in limine to exclude any undisclosed expert witness and any other witness who was not also a record title owner from testifying about the property valuation. That ruling has not been challenged by the Wattses here. During the trial, the only person who testified about the property's value was Entergy's appraiser, J.T. Ferstl, who said that he considered, but did not apply, severance damages to the south end of the property during his appraisal. According to Ferstl, the southern part of the property severed by the easement was not damaged because the owners used the southern portion as timber property, it could continue to be used as a timber property, and the primary residential potential of the acreage was the home, which was on the north end of the property. This testimony is substantial evidence that supports the jury's conclusion that the Wattses suffered no severance damages. As for additional compensation for trees within the easement, *779 that is not a separate item of damage under Arkansas law. Cramer v. Ark. Ok. Gas Corp. , 316 Ark. 465, 468, 872 S.W.2d 390, 392 (1994) (utility that acquired easement to construct gas pipeline through eminent domain proceeding was not required to compensate landowner for injury to trees occurring during construction of pipeline).
Affirmed.
Abramson and Brown, JJ., agree.